UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOUTH PACIFIC SHIPPING COMPANY, LIMITED,

Plaintiff/Counterclaim Defendant

v.

REDI-FRESH PRODUCE INC.

Defendant/Counterclaimant

Case No. 14-cv-4157 (LAK)(AJP)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

Defendant/Counterclaimant Redi-Fresh Produce Inc. ("**Redi Fresh**"), by its attorneys, Holland & Knight LLP, respectfully submits this memorandum of law in support of its motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("**Rule 11**") against Plaintiff/Counterclaim Defendant South Pacific Shipping Co. Ltd. d/b/a Ecuadorian Line ("**South Pacific**"), and for dismissal of South Pacific's frivolous claim.

## PRELIMINARY STATEMENT

The standard for Rule 11 sanctions is simple and clear: sanctions are warranted (i) when litigation is brought for an improper or malicious purpose, such as to harass or needlessly increase the cost of litigation, *or* (ii) when the claims are frivolous.

While satisfaction of either prong warrants the imposition of sanctions, South Pacific's bad faith, retaliatory litigation conduct and patently frivolous claim implicate both prongs of the Rule 11 test.

To wit, the facts and indisputable procedural history of this matter demonstrate that South Pacific has not brought this litigation for a proper purpose, but rather in retaliation for Redi

Fresh's refusal to disobey this Court's attachment order so as to needlessly and maliciously cause Redi Fresh to expend attorneys' fees.

As set forth in detail below, Redi Fresh has deposited all Bonita Banana proceeds into the Court's registry pursuant to this Court's attachment order seizing all Bonita Bananas in the possession of Redi Fresh and a Bonita Bananas proceeds deposit order. Pursuant to statute, this Court's order, and binding equitable authority from both the Supreme Court and the New York Court of Appeals, Redi Fresh was discharged of any and all liabilities associated with its receipt of the Bonita Bananas by making the Court registry deposit.

These facts and law are not subject to argument or legal maneuvering. The outcome is in no way dependent on who Redi Fresh contracted with or whether South Pacific has any claim to freight payable from the Bonita Banana proceeds. Because the attachment order directed attachment of "all Bonita Bananas," the question of whether Redi Fresh contracted with South Pacific or was obligated to remit all proceeds to Truisfruit is irrelevant and mooted. Redi Fresh deposited all Bonita Banana proceeds in the Court's registry and is therefore discharged from liability in connection with any claim, including freight, in connection with the Bonita Bananas. Otherwise, this Court's attachment order would necessarily have the effect of creating liabilities as against a third party garnishee.

Despite these facts, South Pacific maliciously seeks to impose double liability on Redi Fresh because South Pacific is unhappy with ***this Court's*** (not Redi Fresh's) decision to disperse the Bonita Bananas proceeds deposited in this Court's registry to NYK Cool A.B. ("**NYK Cool**"). In fact, South Pacific merely slept on its rights, having full actual and constructive knowledge of both the deposit of all Bonita Banana funds in the Court's registry and NYK Cool's motion to receive the same.

Redi Fresh respectfully submits that commencing litigation and seeking to impose double liability on Redi Fresh, despite statute, court order, and binding precedent absolving Redi Fresh of liability, is by itself, sanction-worthy conduct.

But this strategy is not South Pacific's only transgression, nor is it the extent of South Pacific's bad-faith litigation strategy. Despite the clear and necessary connection between South Pacific's "claim" and litigation in which the Bonita Bananas were attached, *NYK Cool A.B. v. Pacific International Serv. Inc., et al.,* 12-cv-5754 (LAK) ("**NYKCOOL Litigation**"), South Pacific's counsel in the NYK Cool Litigation[1] filed this action in the Eastern District of New York in a transparent attempt to avoid the fair disposition of this dispute by a court without knowledge of the facts.

Redi Fresh sent letters to both Courts describing this blatant forum shopping, and thereafter South Pacific immediately withdrew the Eastern District of New York case. But South Pacific was not yet done playing games. It then filed the instant action in state court, once again despite the clear related nature of its claim to the NYKCOOL Litigation, once again attempting to avoid the fair disposition of this dispute by a court without knowledge of the facts. South Pacific filed in state court despite the fact that it was removable to this Court as of right (due to diversity jurisdiction) solely for the purpose of forcing Redi Fresh to expend attorneys' fees to effectuate the removal. Redi Fresh specifically requested that South Pacific withdraw the New York state court complaint and re-file this case as a related matter in this Court or else Redi Fresh would seek attorneys' fees associated with the removal. South Pacific refused to comply.

If one were unacquainted with the Naboa organization (of which South Pacific is unquestionably a member), the combination of (i) pursuing a frivolous double-liability action in the face of binding statute, court order, and precedent, arising from a garnishee's court deposit in

[1] Or at least by counsel representing South Pacific, with the exact same full name and spelling.

connection with an attachment order (issued due to their fraudulent transfer of assets to avoid NYK Cool's judgment) *and* (ii) engaging in transparent and blatant forum shopping might be shocking. But even this is not the extent of South Pacific's bad faith conduct – for South Pacific's underlying "claim" has not yet been addressed.

In an unverified and otherwise unsworn Court filing, months after the precise nature of the Redi Fresh/Truisfruit relationship was fully litigated in the NYKCOOL Litigation via comprehensive document discovery, sworn affidavits, and depositions before this Court, South Pacific claims that pursuant to an *oral* agreement never before disclosed, Redi Fresh owes South Pacific a million dollars in freight, and apparently argues Redi Fresh should have withheld this sum despite the clear terms of this Court's attachment order attaching all Bonita Bananas and directing all such proceeds to be placed in the Court's registry.

As South Pacific knows well, however, Redi Fresh never contracted with South Pacific. Ample document production and sworn testimony has already shown that Redi Fresh agreed to sell the Bonita Bananas on Truisfruit's behalf in exchange for a commission, at prices dictated by Truisfruit. At the most fundamental of levels, the payment of a commission to Redi Fresh for selling bananas is simply incompatible with Redi Fresh owing freight to any party. Redi Fresh's job was to sell the bananas and remit the proceeds to Truisfruit, and Truisfruit, which undeniably arranged for the transportation of the bananas, would pay any freight. What makes this action truly frivolous is that due to the incestuous and alter-ego nature of the Naboa organization, it was South Pacific, not Truisfruit that paid Redi Fresh its commission (as well as certain attorneys' fees).

As such, the question for this Court is not whether an oral contract for breach of a maritime contract technically gives rise to a cause of action, but rather the question is whether

unsworn allegations when compared to the documentary discovery, sworn testimony, and the contradictory fact of South Pacific's payment of Redi Fresh's commission, render the claim so frivolous as to fall within the ambit of Rule 11. Redi Fresh submits that the answer is "yes."

## RELEVANT FACTS

Redi Fresh is a New York Corporation founded in 1998 by Peter Malo. Over the past fifteen years Redi Fresh has purchased, imported and sold fruit of various types to wholesalers all around the United States.

Beginning on or about June 2013, Redi Fresh entered into an agreement with a company called Truisfruit S.A. whereby Redi Fresh would take title to and sell Bonita Bananas on Truisfruit's behalf, at prices dictated by Truisfruit, in exchange for a commission and payment of costs. Thereafter, Truisfruit apparently hired South Pacific, a sister company, to transport the Bonita Bananas to Redi Fresh. Critically, South Pacific then paid Redi Fresh's commission, on Truisfruit's behalf, pursuant to the Redi Fresh-Truisfruit agreement.

On or about August 1, 2013, this Court issued an attachment order in the NYK Cool Litigation (the "**Attachment Order**") directing that "all Bonita Bananas coming into the port of New York" be subject to levy and attached. The Attachment Order was served on Redi Fresh while it was in possession of Bonita Bananas pursuant to the Redi Fresh-Truisfruit agreement.

After motion practice, in which the scope of the levy (i.e. being "all Bonita Bananas") was specifically litigated and upheld (*see* NYK Cool Litigation D.E.'s 92-102), the Attachment Order was upheld in all respects at a court hearing on September 18, 2013. Over the next four weeks, voluminous document and deposition discovery took place concerning the nature of the Redi Fresh-Truisfruit agreement, the quantity of bananas actually received and sold, the

commissions earned, and the moneys due to Truisfruit. At all times, an entity called South Pacific Shipping Co. Ltd. participated in the litigation. Counsel for South Pacific, the same counsel who would later file the first iteration of this action in the Eastern District of New York, was present during the depositions of Redi Fresh's principal, Peter Malo, and Mike Stamatis of Redi Fresh, who in sworn testimony stated that all proceeds of the Bonita Banana sales were owed to Truisfruit and that no freight was owed by Redi Fresh to any party, including South Pacific.

After the Attachment Order was upheld and the discovery took place, on or about October 28, 2013, this Court issued a Consent Order, publicly filed on ECF (NYKCool Litigation D.E. 126) (the "**Deposit Order**"), which provided as follows:

> "WHEREAS, garnishee Redi Fresh Produce Inc. is holding funds reflecting sale proceeds collected from the sale of Bonita brand bananas. Plaintiff has asserted such funds from the sale of Bonita Bananas should be restrained by Garnishee pursuant to the Attachment Order. Garnishee has asserted that it owes non-party Truisfruit S.A., the supplier of the Bonita Bananas, the sales proceeds collected from Garnishee's sale of Bonita bananas minus a management fee, costs, expenses and legal fees incurred by Garnishee in this action [as comprehensively detailed by Redi Fresh]...
> IT IS HEREBY ORDERED THAT:
> 1. The Attached Funds presently under restraint by Garnishee in the amount of $1,376,787.60 and any Future Bonita Funds [as defined in the order] are hereby ordered to be transferred by Redi Fresh Produce, Inc. and deposited in the Court Registry of the United States District Court for the Southern District of New York...
> 8. Redi Fresh Produce, Inc. shall have discharged its obligations as garnishee in this action upon receipt of the Attached Funds into the Registry of the Court subject to its obligations as set forth herein regarding "Future Bonita Funds." (emphasis supplied).
> A copy of the Deposit Order is attached hereto as Appendix 1.

The Naboa organization warned Redi Fresh that it was "playing with fire" if it obeyed the attachment order and deposited the funds. Redi Fresh deposited all of the Attached Funds and the Future Bonita Funds in this Court's registry pursuant to the Deposit Order. These acts fully

and completely discharged Redi Fresh's responsibility as garnishee pursuant to the Deposit Order and the clear and express provisions of New York's Civil Practice Law and Rules (“**CPLR**”).

In April 2014, South Pacific commenced an action styled *South Pacific Shipping Company Limited, Inc. v. Redi-Fresh Produce Inc.*, 14-cv-1725 (E.D.N.Y.) (JBW) ("**EDNY Complaint**"). The EDNY Complaint was filed by South Pacific's counsel in the NYKCOOL Litigation.

In the EDNY Complaint, South Pacific alleged that "South Pacific Shipping, is a foreign corporation with an agent, Ecuadorian Line Inc., with an office and place of business at 60 Park Place, Newark, NJ, and is the owner and/or operation [sic] of ocean vessels." The Court is invited to compare this statement to South Pacific's current complaint, in which it alleges "Plaintiff was and now is a corporation organized and existing under the laws of Panama, with a principal place of business at Avenida Balboa, Edificio P.H. Bay Mall, 2 do piso, Oficina 218."

On April 8, 2014, Redi Fresh sent a letter to the EDNY Court and this Court objecting to South Pacific's forum shopping tactics. The EDNY Complaint was withdrawn by South Pacific the next day.

On or about May 30, 2014, South Pacific filed the instant action in New York State Supreme Court. Also on May 30, 2014, the undersigned sent an email to South Pacific's new counsel, requesting that the New York state action be withdrawn. On or about June 10, 2014, Redi Fresh removed this action to this Court.

Finally, Redi Fresh draws this Court's attention to a set of facts concerning “Rica” Brand Bananas. As noted above, Redi Fresh agreed only to sell “Bonita” Bananas on Truisfruit's behalf. During the July/August 2013 time period, Truisfruit, unsolicited, sent Redi Fresh “Rica”

brand bananas to sell. These "Rica" brand bananas were deemed outside the Court's Attachment Order, which seized all "Bonita" Brand Bananas. A total of 35,640 boxes of "Rica" Bananas were shipped to Redi Fresh by Truisfruit. Redi Fresh initially objected to receiving the bananas but ultimately agreed to attempt to sell the Rica bananas pursuant to the terms of the Bonita Banana deal. The Rica Bananas were largely unsellable, and all but 6,480 boxes were returned to Truisfruit by Redi Fresh. Redi Fresh segregated the proceeds of the 6,480 boxes of Rica bananas, totaling $79,380. It is Redi Fresh's understanding that these proceeds, less applicable setoffs are owed to Truisfruit. Redi Fresh has offered to pay this sum to whomever it is owed, so long as there is an acknowledgment from both Truisfruit and South Pacific of the same. Redi Fresh never received any response.

## ARGUMENT

Rule 11 of the Federal Rules of Civil Procedure provides that sanctions may be imposed when pleadings, papers or other written motions are presented to the Court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation... [or] the claims defenses and other legal contentions are [not] warranted by existing law" Fed. R. Civ. P. R. 11.

"The central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." *See Gal v. Viacom Intern. Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) *(citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.*, No. 05-CV-3826, 2009 WL 2957849, at *4 (E.D.N.Y. Sept. 10, 2009) (objective standard of reasonableness employed and sanctions are appropriate where a paper is presented for an improper purpose or is not well grounded in fact).

## POINT I: SOUTH PACIFIC IS IMPERMISSIBLY AND MALICIOUSLY SEEKING TO EXPOSE REDI FRESH TO DOUBLE LIABILITY

For centuries the U.S. Supreme Court has recognized that double liability raises concerns of a constitutional nature. As Justice Kent wrote, "[n]othing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again." *Embree v. Hanna, 5 Johns* 101, 102 (1809); see also *Harris v. Balk*, 198 U.S. 215, 226 (1905) ("It ought to be and it is the object of courts to prevent the payment of any debt twice over."). Applying this principle, the Supreme Court warned that even where the court has *in rem* jurisdiction, "the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment." *Western Union Telegraph Co. v. Pennsylvania,* 368 U.S. 71, 75 (1961).

New York's courts also recognize the prohibition on double liability and have held that this prohibition is "reflected" in the CPLR's discharge provisions. *See Oppenheimer v. Dresdner Bank A.G.,* 50 A.D.2d 434, 441 (2d Dep't 1975); *see also* CPLR 6204 (providing that upon payment of the money or personal property by the garnishee, the garnishee is discharged from his obligations to the extent of the obligation of payment); *JPMorgan Chase Bank, N.A. V. Motorola,* 47 A.D.3d 293, 306-07 (1st Dept 2007) (requiring a bank to pay a debt twice over "would be 'an unconscionable result'"). Meanwhile, this Court's own Deposit Order expressly provided that Redi Fresh was "discharged from its obligations as garnishee."

In this case, the "attachment" in question was all Bonita Bananas in New York which Redi Fresh had in its possession. Redi Fresh sold the Bonita Bananas and deposited all of the proceeds in this Court's registry.

The question of whether and to whom Redi Fresh owed the Bonita Bananas money is ultimately a red-herring. All Bonita Bananas were attached, and as such, the *res* in question was first those bananas, and then the proceeds of their sale. By depositing the Bonita Banana proceeds in the Court's registry, Redi Fresh was absolutely and necessarily absolved from all further dealings or debts in respect of the bananas.

The current action by South Pacific is designed to hold Redi Fresh doubly liable. This is an impermissible and malicious purpose not warranted by the facts or existing law. When Redi Fresh deposited the funds, South Pacific, who knew Redi Fresh's position well and had participated in the depositions concerning its purchases of the Bonita Bananas, could have filed a claim or notice with this Court in respect of the deposited funds. South Pacific slept on its rights and allowed NYKCOOL to make a motion for release of the funds, to which motion it did not object, yet now it seeks to punish Redi Fresh for the result.

If South Pacific actually believed that it had an agreement with Redi Fresh whereby Redi Fresh owed South Pacific freight (which it did not and does not), then the remedy available to South Pacific was and is to move pursuant to Rule 55 to vacate the Court's disbursement order in the NYKCOOL Litigation. In such a motion, South Pacific would have had to present whatever evidence and testimony demonstrated that it was owed a portion of the deposited funds as freight. Because Redi Fresh has fully and completely testified and produced all documentation concerning its agreement with Truisfruit, this Court would have been in a position to make a decision after hearing from South Pacific's witnesses.

However, South Pacific did not take that obvious course. Why? Because South Pacific would have no chance of success. Even in the event that this Court vacated the NYKCOOL disbursement order and clawed a portion of the Bonita funds representing "freight" back into the

Court's registry, South Pacific would still have been either a named defendant or an obvious alter-ego of Truisfruit and the Naboa group. At a minimum, and purely within the context of this Redi Fresh/South Pacific dispute, South Pacific paid both Redi Fresh's commission and Redi Fresh's attorneys' fees, both of which were owed by Truisfruit. As such, even on the dubious assumption that South Pacific is not already a named defendant in the NYKCOOL litigation, NYK Cool will simply amend its complaint naming this South Pacific as an alter-ego and re-attach the proceeds.

This ultimately underscores South Pacific's malicious intent: South Pacific is well aware that there is no circumstance in which NYKCOOL would allow South Pacific to receive moneys via this Court. Hence there is no "end game" for South Pacific – a fact which South Pacific knows well. As such, this action was commenced purely for the purpose of forcing Redi Fresh to expend attorneys' fees and to impermissibly expose Redi Fresh to the threat of double liability in retaliation for Redi Fresh's refusal to disobey this Court' Attachment Order.

## POINT II: SOUTH PACIFIC'S JUDGE SHOPPING AND FRIVOLOUS CLAIM

As exemplified by Local Rule 13(a)(1), parties have a mandatory obligation to file cases as "related" where "(A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses."

Knowing full well that the Bonita Bananas' status, the Bonita Bananas' proceeds, the Redi Fresh-Truisfruit relationship, and the absence of any Redi Fresh-South Pacific relationship were all subject to litigation and discovery in the ongoing NYKCOOL litigation, South Pacific

attempted to wrongfully create a circumstance whereby Redi Fresh would have to educate the EDNY Court and the New York Supreme Court of all the facts and procedural history in respect of the NYKCOOL litigation, creating undue litigation expenses and burdens on Redi Fresh. Moreover, the precise intent of South Pacific was to create a situation where Redi Fresh could be the subject of conflicting orders. In sum, the EDNY and New York Supreme Court filings are bad-faith litigation tactics, executed for "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See* Fed. R. Civ. P. R. 11.

Finally, South Pacific's underlying ("oral contract") claim is either so specious it should be deemed to violate Rule 11, particularly in conjunction with the prohibition against double liability, the lack of a viable "end game" and the forum shopping. Redi Fresh will be first to the maritime law would acknowledge the validity and enforceability of oral contracts particularly in the case of specially protected seamen and ship-owners concerning their labor. Hence, in a vacuum, South Pacific allegation of breach an oral agreement would not be wrongful

But this is not a vacuum. This is a case where the precise nature and details of Redi Fresh's agreement with Truisfruit with respect to the Bonita Bananas, and lack of agreement with Truisfruit, has already been painstakingly litigated. A myriad of documents and emails where Truisfruit sets the prices for the Bananas and sworn affidavits and deposition testimony have been adduced to the effect that all Bonita Proceeds were due to Truisfruit and that no freight was due to South Pacific. The Naboa organization was perfectly happy with this position for a great while given the (at the time, universal) belief that South Pacific was a defendant in the NYKCOOL litigation and Truisfruit was not, at the time, party.

It is especially noteworthy that South Pacific chose to eschew the custom of verification of maritime complaints and submit only an unsworn complaint, a few paragraphs in length, that did not attempt to explain or reference the NYKCOOL litigation concerning the same subject.

Indeed, contrary to the South Pacific's EDNY filing, which did not even allege that a transportation agreement existed, South Pacific's reconstituted complaint merely referenced an "agreement," but not specifically with Redi Fresh. Merely sending an invoice in connection with services not provided to Redi Fresh, but to Truisfruit, pursuant to an agreement with Truisfruit, does not entitle South Pacific to any relief from Redi Fresh.

Ultimately, Truisfruit's dictating the sale prices of the bananas and Redi Fresh's receipt of a commission for its sales agreement with Truisfruit, are fundamentally incompatible with any argument that Redi Fresh had an obligation to pay freight. Truisfruit was the party that knew what (if any) freight it would owe to its affiliate, South Pacific, and made its decisions accordingly. Meanwhile, Redi Fresh was locked into (i) a defined commission, (ii) prices set by Truisfruit *and* (iii) an obligation to pay Truisfruit all proceeds. The payment of freight to a third party on top of this is nonsensical because it would mean that Redi Fresh was bargaining to lose in excess of $900,000 knowingly.

The straw that breaks the proverbial camel's back is the fact that South Pacific itself made the commission payment on Truisfruit's behalf from South Pacific's bank account. If there is any dispute as to this point, Redi Fresh would welcome any evidence that controverts the bank records in its possession. This commission payment proves and demonstrates South Pacific's actual knowledge of the commission-based agreement with Truisfruit, and the truly malicious, retaliatory nature of this action.

## CONCLUSION

No party would ever admit that their litigation strategy is malicious or frivolous. Courts must therefore employ an objective standard of reasonableness to determine whether Rule 11 has been violated. The purpose and function of Rule 11 is "to protect defendants and the court from wasteful, frivolous and harassing lawsuits and provides for sanctions as a deterrent." *Simpson v. Putnam County Nat'l Bank*, 112 F. Supp. 2d 284 (S.D.N.Y. 2000).

Redi Fresh submits that the combination of South Pacific's bad-faith double liability strategy, its judge-shopping gamesmanship, and its patently specious underlying claim are each independently sufficient to merit Rule 11 sanctions. In combination, they have resulted in a serious violation that has cost Redi Fresh tens of thousands of dollars in wasted attorneys' fees and its own time.

Dated: October 10, 2014

HOLLAND & KNIGHT LLP

By: [signature]

James H. Power, Esq.
Warren E. Gluck, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
warren.gluck@hklaw.com

*Counsel for Redi Fresh Produce, Inc.*

# APPENDIX 1

# ECF TRANSCRIPTION SHEET

ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.: (212) 805-7933
Telephone No.: (212) 805-0036

Dated: October 28, 2013 Total Number of Pages: 5

10. Dkt. No. 118 and all prior TROs and Orders to Show Cause are now resolved.

Copies by ECF to: All Counsel
Judge Lewis A. Kaplan

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 10/28/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

NYKOOL, A.B.,

Plaintiff,

-against-

PACIFIC INTERNATIONAL SERVICES, INC., PAN AMERICAN RADING COMPANY, INC., FRUIT IMPORTERS AMERICAS, INC., PACIFIC GROUP HOLDING, INC., ECUADORIAN LINE, INC., SOUTH PACIFIC SHIPPING CO. LTD., ALVARO FERNANDO NOBOA PONTON, CARLOS AGUIRRE, CARLOS AHLSTROM, EDWARD HICKEY and ROBERT KISSINGER

Defendants.

-and-

PACIFIC FRUIT INC. and KELSO ENTERPRISES LTD.,

Defendants-in-Interest.

---------------------------------------------------------------------X

12 Civ. 5754 (LAK)

**CONSENT ORDER**

**ORDER DIRECTING REDI FRESH PRODUCE INC TO PAY ATTACHED FUNDS INTO THE REGISTRY OF THE DISTRICT COURT**

WHEREAS, on or about August 1, 2013 Plaintiff NYK Cool A.B. sought and obtained an Ex Parte Order of Attachment (the "Attachment Order"); and

WHEREAS, garnishee Redi Fresh Produce, Inc. ("Garnishee") is holding funds reflecting sale proceeds collected from the sale of Bonita brand bananas. Plaintiff has asserted such funds from the sale of Bonita bananas should be restrained by Garnishee pursuant to the Attachment Order. Garnishee has asserted that it owes non-party Truisfruit S.A., the supplier of the Bonita bananas, the sales proceeds collected from Garnishee's sale of Bonita bananas minus a management fee, costs, expenses and legal fees incurred by Garnishee in this action ("Attached

Funds"); and Garnishee and Plaintiff wish to deposit into the Court Registry the Attached Funds; and

WHEREAS, as of the date of this Order, the value of the Attached Funds is $1,376,787.60; and

WHEREAS, Garnishee asserts that additional sums remain due and owing by third party customers to Garnishee for the sale of Bonita bananas by Garnishee. These funds may or may not be collected due to various issues including alleged quality issues with the bananas. To the extent that efforts are undertaken by Garnishee to collect such funds Plaintiff has consented to a commission of 6.5% of the amount collected from third parties by Garnishee; and

WHEREAS, Garnishee and Plaintiff wish to similarly deposit into the Court Registry the remaining sums due and owing from third parties when, and if, collected minus a 6.5% commission to Garnishee ("Future Bonita Funds"); and

WHEREAS, Garnishee and Plaintiff wish to have Garnishee transfer the Attached Funds and any later obtained Future Bonita Funds into the Registry of the Court and now jointly seek an order directing Redi Fresh Produce, Inc. to pay the Attached Funds and Future Bonita Funds into the Registry of the Court; and

WHEREAS, Plaintiff and Garnishee also seek an order that the Attached Funds and any Future Bonita Funds, on receipt into the Registry of the Court, should be transferred by the Clerk to the Court Registry Investment System, Interest Beating Account pending further order of the Court; and

IT IS HEREBY ORDERED that:

1. The Attached Funds presently under restraint by Garnishee in the amount of $1,376,787.60 and any Future Bonita Funds are hereby ordered to be transferred by Redi Fresh Produce, Inc. and deposited in the Court Registry of the United States District Court for the

Southern District of New York. Said transfer is to be accomplished by electronic funds transfer, referencing this case name and number and the amount restrained, to the Clerk of the Court, United States District Court for the Southern District of New York, at U.S. Treasury, Agency Locator #4654, ABA Routing #021030004; and

2. Upon receipt of the aforementioned deposits, the Clerk of the Court, as soon as his office allows, shall prepare the necessary forms for the purpose of placing said funds into the Court Registry Investment System, Interest Bearing Account; and

3. The Clerk shall deduct from the income earned on the investment by the deposited amounts a fee not to exceeding that authorized by the Judicial Conference of the United States and set by the Director of Administrative Office, whenever such income becomes available for deduction from the investment so held without further order of this Court being required; and

4. Statements of interest earned on the deposited funds shall be provided to counsel for the parties periodically, in accordance with the usual practice applicable to the deposit of such sums; and

5. The funds on deposit, together with all accumulated interest, less any authorized registry fees ("available funds"), shall be disbursed in whole or in part as follows:

    A. In accordance with the terms of a joint stipulation submitted by the parties requesting disbursal of part or all of the available funds; or

    B. In accordance with the voluntary reduction of Plaintiffs claim; or

    C. In accordance with any final judgment or award rendered by any Court or arbitration panel of competent jurisdiction, after the exhaustion of any and all appeals or the time in which a party may apply to vacate, modify, or correct the award has elapsed without action; or

D. In accordance with any decision or order of this Honorable Court; and

6. To the extent that after disbursement of the funds in accordance with Paragraph 5 above, any further funds remain on deposit in the Registry of the Court, such further funds shall be disbursed in accordance with the joint stipulation of the parties or on motion to this Court; and

7. Upon entry of this Order, Plaintiff's counsel shall serve a signed copy of this Order upon the Clerk of Court, Room 120, and on a Financial Deputy in the Cashier's Office in Room 120; and

8. Redi Fresh Produce, Inc. shall have discharged its obligations as garnishee in this action upon receipt of the Attached Funds into the Registry of the Court subject to its obligations as set forth herein regarding "Future Bonita Funds"; and

9. In all other respects, the Attached Funds and any Future Bonita Funds, including all interest earned thereon up to and including the date of withdrawal, shall be held pending further order of this Court.

10. Dkt No 118 and all prior TROs and Orders to Show Cause are now resolved. AP

Dated: October 28, 2013

Honorable Andrew J. Peck
United States Magistrate Judge

HON. ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

We consent to the following Order:

James H. Power | MEL
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019

*Attorney for Garnishee, Redi Fresh Produce, Inc*

Edward A. Keane
Mahoney & Keene LLP
40 Worth Street, 10th Floor
New York, NY 10013

*Attorney for Plaintiff, NYK Cool A.B.*