BLANK ROME LLP
Attorneys for Plaintiff
The Chrysler Building
405 Lexington Ave.
New York, NY  10174-0208
John D. Kimball
Thomas H. Belknap, Jr.
Kate B. Belmont
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SOUTH PACIFIC SHIPPING COMPANY LIMITED:
INC.,
                                Plaintiff,

                      -against-

REDI-FRESH PRODUCE INC.,

                               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  1:14-cv-04157 (LAK-AJP)

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION:
ORAL ARGUMENT REQUESTED**

  Plaintiff, and its attorneys Blank Rome LLP, respectfully submit their objections to the Magistrate Judge's Report & Recommendation ("Report") dated December 11, 2014, recommending the Court grant defendant's motion to dismiss the complaint and for sanctions.  (Dkt No. 34: Report.)

<h2 style="text-align:center">PRELIMINARY STATEMENT</h2>

  The complaint sets forth a simple claim for freight for the admitted transport of six banana shipments. The Magistrate Judge, however, improperly and unfairly pre-judged plaintiff's claim without a hearing or proper factual record, based on his own biases derived from the "NYKCool litigation."  The Magistrate Judge unfairly concluded, without proper due process, that plaintiff's claim was "tarnished," to use his word, by the conduct of defendants in the NYKCool litigation, notwithstanding that plaintiff was never a party to that case, had no

involvement in the disputes which led to that litigation, and has never been shown to be an alter ego of any party.

This prejudgment of plaintiff's claim and its motives in pursuing this action was grossly unfair and prejudicial. The Magistrate Judge unfairly "found" plaintiff's claim to be frivolous, notwithstanding his acknowledgement that its complaint properly stated a *prima facie* breach of contract claim, based on "judicially noticed facts" gleaned from the NYKCool litigation, to which plaintiff was not a party. In particular, he found that the consent order in the NYKCool litigation, pursuant to which defendant deposited certain sales proceeds with the court, extinguished plaintiff's right to be paid freight earned in the transport of the bananas. The Magistrate Judge, however, failed even to address plaintiff's argument that the consent order expressly carved out defendant's "costs" from its obligation to deposit funds with the court, and that plaintiff's unpaid freight clearly was a "cost" for which defendant remains liable.

Plaintiff is a Panamanian corporation and is not one and the same as the Bermuda entity which shares a similar name in the NYKCool litigation. Although it conducts business under the name "Ecuadorian Line," plaintiff is not the Delaware corporation, Ecuadorian Line, Inc., which is a defendant in the NYKCool litigation. The Magistrate Judge's assumption that the parties were one and the same, and his suggestion that plaintiff was misleading about this distinction, are wholly incorrect and not supported by any evidence. Indeed, no pre-trial discovery or any hearings were permitted.

Plaintiff's complaint was filed in good faith; states a valid, provable claim; and was supported with documentary evidence, including the declaration of a director from South Pacific. Blank Rome conducted proper due diligence before this action was filed to review the pleadings in the NYKCool litigation, which confirmed *inter alia*, that plaintiff was never a party to that

2

action, no ruling in that action precluded the present action, and plaintiff's claim was not only facially valid but was, in fact, meritorious.  In light of the foregoing, the Magistrate Judge's assumption that plaintiff's motives were improper in bringing this action is based on a false premise and bias rather than evidence and should be rejected.

## STANDARD OF REVIEW

A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge.  28 U.S.C.S. § 636(b)(1).  When a timely objection has been made to the magistrate judge's recommendations, the court is required to review the contested portions *de novo*.  *Cusamano v. Donelli*, 2010 U.S. Dist. LEXIS 66009 (S.D.N.Y. July 1, 2010.)  Because of the gravity of the Report, *de novo* review is of high importance in this case.

## BASIC FACTS

**1.     Plaintiff's Claim**

This case concerns a claim by plaintiff for non-payment of freight for certain banana shipments in 2013.  Many of the key facts cannot be disputed, including the following:

1. Defendant agreed to purchase the bananas on F.O.B. terms;
2. In an F.O.B. sale, it was defendant's obligation to pay the ocean freight to transport the bananas from the load port to the discharge port;
3. Plaintiff transported six shipments of bananas purchased by defendant from Ecuador to New York; and
4. Plaintiff has not been paid the freight for the shipments.

In July 2013, plaintiff participated in discussions with defendant concerning its purchase of bananas for import to the United States. (Dkt. No. 23: Kimball Dec., Ex. 16; M. Stamatis

3

transcript at 31, 33-34.)  The discussions led to an oral agreement, the terms of which were confirmed on July 14, 2013 (Dkt. No. 23: Kimball Dec., Ex. 16; M. Stamatis transcript at 39-42), by which Truisfruit would sell bananas to defendant on an F.O.B. basis.  (*See* Dkt. No. 23: Kimball Dec., Ex. 17; P. Malo transcript at 78-79.)  Defendant agreed to purchase an average of 40 to 50 container loads per week, 960 or 1080 boxes per container at Truisfruit's option, of "Bonita and Rica" green bananas.  (Dkt. No. 22: Guerrero Dec., Ex. 11.)

It cannot be disputed that defendant agreed to purchase the bananas on F.O.B. terms. "F.O.B." means "free on board," which is a standard industry term meaning, "the seller delivers the goods on board the vessel nominated by the buyer at the named port of shipment or procures the goods already so delivered.  The risk of loss of or damage to the goods passes when the goods are on board the vessel, and the buyer bears all costs from that moment onwards."[1]  Thus, defendant was responsible for transporting the bananas, including the costs of shipping.

The agreement provided that the bananas would be transported aboard plaintiff's vessels and defendant would pay ocean freight to plaintiff.  Contrary to the Magistrate Judge's assertions (Dkt. No. 34: Report at 5 and 7), defendant was well aware it was purchasing the bananas on F.O.B. terms and owed plaintiff for freight.  Peter Malo, president of Redi Fresh, testified as follows:

> Q: Okay.  The TruisFruit invoices are eight dollars and change for a carton?
> A: 8.53.
> Q: And all the cartons sold that are reflected in 17 and 16 are somewhere in a range of 13 to $15 a carton; is that right?
> A: That's correct, from what I see there, yes.  On first pages, yes.
> Q: So once sold, who would get the difference between the eight dollars and change TruisFruit invoice amount and the amount actually sold, the amount for which the cartons were actually sold?
> A: Well, we have invoices from TruisFruit and we also received

---

[1] *See* http://www.iccwbo.org/products-and-services/trade-facilitation/incoterms-2010/the-incoterms-rules/.

4

>    invoices from the shipping company. I don't recall the name, but
>    we have received invoices from them too.
>    Q: What do you mean the shipping company?
>    A: The freight.

(Dkt. No. 23: Kimball Dec., Ex. 17; P. Malo transcript at 110-111.)

Plaintiff was the "shipping company" referred to in Malo's testimony above. Thus, in accordance with the agreement, Truisfruit sold bananas to defendant and, beginning on July 20, 2013, plaintiff transported the bananas for defendant aboard its vessels from Ecuador to New York. (Dkt. No. 22: Guerrero Dec. at ¶ 6.)

On August 2, 2013, Truisfruit's legal counsel sent plaintiff a contract memorializing the F.O.B. loadport terms. (Dkt. No. 22: Guerrero Dec. at ¶ 10, Ex. 11.) This agreement was executed by Nayvin Castillo on behalf of Truisfruit, and although it was not signed by defendant (*Id.*), it made no objections to the contract.

Also on August 2, 2013, plaintiff sent defendant a service contract memorializing the transportation agreement. (Dkt. No. 22: Guerrero Dec. at ¶ 11, Ex. 12.) This agreement was executed by Nury Diaz, an officer of South Pacific, and although it was not signed by defendant, it made no objections to the contract. (Dkt. No. 22: Guerrero Dec. at ¶ 11.)

On August, 24, 2013, after plaintiff had performed 5 of the 6 shipments transporting the bananas from Ecuador to New York, there was an additional meeting between plaintiff and defendant, affirming the existing agreement without modifications. (Dkt. No. 23: Kimball Dec., Ex. 16; M. Stamatis transcript at 50-52.)

On August 30, 2013, plaintiff sent defendant's legal counsel, James H. Power, Esq. a draft Contract of Affreightment which memorializes the service agreement. (Dkt. No. 22: Guerrero Dec. at ¶ 12, Ex. 13.)

Upon loading the banana cargoes, plaintiff provided defendant with bills of lading. (Dkt. No. 22: Guerrero Dec., Ex. 14.) Consistent with the agreement, Truisfruit billed defendant for the F.O.B. cost of the bananas and plaintiff submitted its own separate invoices for the ocean freight. (Dkt. No. 22: Guerrero Dec. at ¶ 7 and 9, Exs. 1-6 and 10.) The ocean freight totals $1,229,700.00. Certain credits were issued to defendant in the amount of $315,802.80 ("the Credit Notes"), reducing the amount owed to $913,897.20. (Dkt. No. 22: Guerrero Dec. at ¶ ¶8 and 13, Exs. 7-9.)

No part of the outstanding ocean freight has been paid, although duly demanded. Accordingly, defendant is in breach of its agreement with plaintiff.

**2.      The NYKCool Litigation**

Also pending before this Court is a matter captioned *NYKCool A.B. v. Pacific Int'l Services, Inc.*, 12-cv-5754 (LAK). In that case, the Court entered judgment against certain parties in the amount of $8,787,157.00.

Plaintiff is not and never has been a party to the NYKCool litigation. (Dkt. No. 23: Kimball Dec., Ex. 18.) The plaintiff in the present matter, *South Pacific Shipping Company Limited, Inc.*, is a Panamanian company and a different company from *South Pacific Shipping Co. Ltd.*, a Bermuda corporation, which is a defendant in the NYKCool litigation. Defendant is well aware of this distinction. All invoices and the documentation plaintiff sent to defendant plainly identified it as a Panamanian company and provided its bank account details. (Dkt. No. 22: Guerrero Dec., Exs. 1-10.)

In any event, Bermuda South Pacific has never been found liable to NYKCool, and there has been no finding that plaintiff here is the alter ego of any of the defendants in the NYKCool

143264.06501/7483233v.1

litigation.  (Dkt. No. 23: Kimball Dec., Ex. 18.)  Indeed, no evidence has been proffered which would support such a finding.

Plaintiff does business under the name "Ecuadorian Line" (Dkt. No. 2: Notice of Removal; Ex. 2), but it is not "Ecuadorian Line, Inc.," a party against whom judgment was entered in the NYKCool litigation. (*See* Dkt. No. 23: Kimball Dec., Exs. 18-20.)  Ecuadorian Line, Inc. is a separate Delaware corporation, not Panamanian.  (Dkt. No. 23: Kimball Dec., Ex. 18; Dkt. No. 16: First Motion to Dismiss at ¶ 18.)

By order dated August 1, 2013, the NYKCool court issued an attachment order authorizing the seizure of, *inter alia*, "all banana cargoes entering the Port of New York under the 'Bonita' brand."  (Dkt. No. 23: Kimball Dec., Ex. 19.)  Pursuant to that order, certain of defendant's banana cargoes imported on board plaintiff's vessels were attached.  (*Id.*)  Subsequently, defendant was granted leave to sell the bananas and post adequate substitute collateral to the court's registry.  (Dkt. No. 23: Kimball Dec., Ex. 18; September 18, 2013, Minute Entry.)  A consent order dated October 28, 2013, recited that defendant, as garnishee, was "holding funds reflecting sale proceeds collected from the sale of Bonita brand bananas." (Dkt. No. 23: Kimball Dec., Ex. 20.)  The order further recited that, "Garnishee has asserted that it owes non-party Truisfruit S.A., the supplier of the Bonita bananas, the sales proceeds collected from Garnishee's sale of Bonita bananas *minus a management fee, costs, expenses and legal fees incurred by Garnishee in this action*."  (Dkt. No. 23: Kimball Dec., Ex. 20) (emphasis added.) The order defined the amount owed to Truisfruit as the "Attached Funds" and directed that the "Attached Funds" be remitted into the court registry.

7

### 3. The Present Action

Plaintiff demanded payment of the outstanding freight from defendant; however, defendant refused to pay. (Dkt. No. 22: Guerrero Dec., Exs. 10 and 15.) Thus, on March 12, 2014, plaintiff, by its prior counsel Hill Rivkins LLP, filed suit in the Eastern District of New York. (Dkt. No. 2: Notice of Removal at 13.) That suit, however, was withdrawn.

On May 29, 2014, defendant notified the NYKCool court that it intended to file its own declaratory judgment action seeking a determination that no freight was owed to plaintiff. (Dkt. No. 23: Kimball Dec., Ex. 18; Dkt. No. 191: Notice of Joinder of Garnishee.) The following day, plaintiff, by its present counsel Blank Rome, filed the present case in Supreme Court, New York County. (Dkt. No. 2: Notice of Removal; Ex. 2.) On June 10, 2014, defendant removed the case to this Court and filed a Statement of Relatedness. (Dkt. No. 3.) Plaintiff opposed this application (Dkt. No. 8: Letter to Judge Kaplan), but the Court nevertheless accepted the matter as related.

### 4. Defendant's Motion For Sanctions

By motion dated October 10, 2014, defendant moved for sanctions, arguing that plaintiff's claim was frivolous in light of the consent order by which it deposited the "Attached Funds" into the court registry which, it asserted, discharged it from liability on all claims concerning the bananas, including freight. (Dkt. Nos. 19 and 20: Motion to Dismiss Case as Frivolous and Memorandum of Law.) Plaintiff opposed the motion on the basis, *inter alia*, that defendant's obligation to pay ocean freight was separate and independent from its obligation to pay the sales proceeds and was, in fact, part of the "management fee, costs [or] expenses …" that were expressly withheld by defendant when it deposited the "Attached Funds" into the court registry.

A pre-motion conference was held, but no discovery was conducted and no oral argument or hearing was held on the motion. Nevertheless, the Magistrate Judge issued his Report recommending this Court grant defendant's motion. The Magistrate Judge acknowledged that, "[c]onsidered alone, South Pacific's complaint would state a claim for breach of contract." (Dkt. No. 34: Report at 11.) He further concluded, however, that "[i]n context, and drawing on judicially-noticeable facts from the NYKCool litigation, the facts alleged in the complaint do not 'plausibly give rise to an entitlement to relief.'" (*Id.*)  The Magistrate Judge concluded that plaintiff's assertion that defendant's deposit of the "Attached Funds" into the court registry did not relieve defendant of its obligation to pay outstanding freight charges was "frivolous," and that "South Pacific could have sought release of funds from the Court registry to pay its alleged freight charges, but it did not do so (presumably because NYKCool would have been entitled to any such funds)." (*Id.* at 12.) The Magistrate Judge pre-judged the chances of success on such a motion, however, as follows:

> Such a motion would not have been successful here. By virtue of its own complaint, South Pacific is doing business as Ecuadorian Line. This Court has already entered judgment against Ecuadorian Line in favor of NYKCool. The issue of which Noboa-controlled judgment debtor contracted with Redi Fresh to pay or be paid for ocean freight would not have affected the Court's disposition as to the attached monies. [(*Id.* at 14, n. 5).]

The Magistrate Judge concluded that plaintiff's claim was presented "in a bad faith attempt to harass and punish Redi Fresh by forcing it to needlessly expend attorneys' fees in violation of Rule 11(b)(1)." (*Id.* at pp. 19-20.) He also concluded that plaintiff's former and present counsel did not adequately "apprise Redi Fresh of the existence of two allegedly distinct, like-named 'South Pacific dba Ecuadorian Lines' entities," and that certain statements made by

9

plaintiff were "direct evidence of South Pacific's bad faith desire to use the judicial process to harass." (*Id.*)

## OBJECTIONS

### 1. The Magistrate Judge Erred in Concluding That Plaintiff's Claim is Frivolous On The Merits

The Magistrate Judge relied on *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009), to support his recommendation. (Dkt. No. 34: Report at 11.) As the Supreme Court there explained:

> When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The record is clear, however, that the Magistrate Judge incorrectly applied this standard. Even he acknowledged that on its face, "South Pacific's complaint would state a claim for breach of contract," but he plainly did not assume its veracity. (Dkt. No. 34: Report at 11.) Instead, in his Report issued without discovery, a fact hearing or even oral argument, the Magistrate Judge asserted that plaintiff's claim nevertheless failed to give rise to an "entitlement to relief" based on *facts* which he found precluded recovery. (*Id.*) Specifically, the Magistrate Judge found that defendant's deposit of funds in the court registry absolutely barred any right of recovery against it for freight on the banana shipments. But in so finding, the Magistrate Judge failed even to address plaintiff's argument that the obligation to pay freight was a separate obligation which was clearly carved out from the definition of "Attached Funds", i.e., "sales proceeds," *less* defendant's "commissions, costs [and] expenses." (*See* Dkt. No. 23: Kimball Dec., Ex. 20.)

Under the plain wording of the consent order, ocean freight was clearly part of the "cost" which defendant was withholding. Consequently, defendant did not deposit the freight payments into the court registry and has paid freight to no one.

143264.06501/7483233v.1

The recommendation that the Court find that defendant did not pay the wrong party (Dkt. No. 34: Report at 12), misstates the gravamen of plaintiff's argument. (Dkt. No. 21: Plaintiff's Memorandum of Law at 15-18.) Plaintiff's claim is not that defendant should be held "doubly liable," but that defendant never paid the freight it agreed to pay. Defendant contends that Truisfruit, as seller of the bananas, was responsible to pay the freight from the "sales proceeds," but that is never the case in an F.O.B. sale. Indeed, in his deposition testimony, Peter Malo fully acknowledged that freight was due to the "shipping company." (Dkt. No. 23: Kimball Dec., Ex. 17; P. Malo transcript at 110-111.) There is no order from the Court, nor could there be, extinguishing defendant's debt to plaintiff, and plaintiff is entitled to a fair hearing on this issue.

Defendant is wrongfully seeking to use the Court's animus toward the NYKCool defendants to withhold more than $913,897.20 which is rightfully owed to plaintiff for freight. This matter does not involve double liability, as defendant has never made the requisite freight payment to any party, not to the court registry and not to plaintiff.

### 2. The Magistrate Judge Improperly Conflated Plaintiff With The NYKCool Defendants Notwithstanding The Absence of Evidence Or Hearing

The Magistrate Judge improperly concluded that plaintiff is one and the same as one or more of the defendants in the NYKCool litigation, again without any evidentiary record whatsoever, and consequently incorrectly and unfairly concluded that plaintiff should be bound by the rulings and judgments entered in that litigation. In fact, no alter ego allegations were made by defendant in its motion papers, much less supported by any evidence and no hearings have been held in this regard.[2]

---

[2] In fact, defendant suggests that NYKCool would be responsible for amending its complaint to name plaintiff as a defendant and alter ego. Aside from vague references and insinuations, in its motion papers defendant has failed to directly allege that plaintiff is an alter ego of any defendant in the NYKCool litigation, or provide any alter ego analysis in this regard. (Dkt. No. 20: Defendant's Memorandum of Law at 3-4 and 11.)

11

As a fundamental matter, the Second Circuit has stated that "the prerequisites for piercing the corporate veil are as clear in federal maritime law as in shoreside law": the veil will be pierced only if a corporation was used by another entity to "perpetrate a fraud" or was "so dominated" and its corporate form "disregarded" such that it primarily transacted the other entity's business. *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. N.Y. 1980). There has been no showing that plaintiff "perpetrated a fraud" or wronged any party. Indeed, there is no evidence to support such a contention. Plaintiff simply carried bananas from Ecuador to New York, according to the terms agreed to by defendant. Further, notwithstanding the Magistrate Judge's presumption and supposition, the record (such as it is) clearly demonstrates that plaintiff is a Panamanian corporation and not the Bermuda company, South Pacific Shipping Co. Ltd., that is a defendant in the NYKCool litigation, and not the Delaware company, Ecuadorian Line, Inc., against whom judgment was entered in the NYKCool litigation. The Magistrate Judge erred in suggesting otherwise.

Defendant has been on notice from the outset that plaintiff is a separate entity from South Pacific Bermuda. Beginning in July 2013, defendant received invoices for ocean freight from plaintiff that listed its Panamanian address. (Dkt. No. 22: Guerrero Dec.; Exs. 1-6 and 10.) On each shipping invoice, the address of plaintiff is listed as Avenida Balboa, Edificio P.H. Bay Mall, 2do piso Oficina 218, Panama, Panama. (Dkt. No. 22: Guerrero Dec.; Exs. 1-6.) Also, contrary to the Magistrate Judge's assertion on page 9 of his Report, plaintiff's address in Panama was noted in paragraph 1 of its complaint. (*See* Dkt. No. 2: Notice of Removal; Ex. 2.) The existence of South Pacific Panama was never concealed from defendant or the Court, as the Magistrate Judge suggests. (Dkt. No. 34: Report at 9 and 21.) Further, once Blank Rome was retained by plaintiff, Blank Rome immediately notified defendant that plaintiff was a separate

and distinct entity from South Pacific Bermuda.  (*See* Dkt. No. 2: Notice of Removal, Ex. 2; *see also* Dkt. No. 8: Letter to Judge Kaplan.)

The record is clear that the Magistrate Judge's "conclusion" that plaintiff should be conflated with the NYKCool defendants arose directly from his own assumptions and bias rather than any evidence submitted by any party in this matter.  The Magistrate Judge refers to an answer given by plaintiff's counsel at the Initial Scheduling Hearing that plaintiff and South Pacific Bermuda are "in the same group" (Dkt. No. 15: Transcript from Scheduling Hearing on July 29, 2014 at 24), but this statement cannot stand as grounds for piercing the corporate veil or a finding that plaintiff should be bound by proceedings to which it was never a party.  (Dkt. No. 34: Report at 2.)

Indeed, this cannot be a matter of collateral estoppel, as there are no rulings in the NYKCool litigation which control the dispute at issue here.  Rather, it is a simple issue of prejudice, or "tarnish" as the Magistrate Judge put it.  At the scheduling hearing on July 29, 2014, the Magistrate Judge stated as follows:

> Well, I guess I would put it to you this way:  That group, or at least certain members of that group, have been thumbing their nose at the court's judgment in favor of NYKcool for quite a long time.
>
> To the extent you have any influence on other members of that group, to wit, Mr. Noboa, it might be time, although this seems to be the New York lawyers full time employment act, and I hate to deprive lawyers of money.  But it is time for Mr. Noboa to try to work out a resolution of all of this without umpteen different lawsuits pretending that his company A is not related to his company B, etc., etc., etc.
>
> *So, you come into this court with a little bit of tarnish on you because of the related case, there is no doubt about that.*  Nevertheless, the rules are the rules.  But you might want to talk, you probably can't talk to Mr. Noboa, but you can talk to somebody who reports to somebody who reports to somebody who

13

> takes orders from Mr. Noboa and it gets translated down. See if there is a way to work all this out….
>
> Just one word of warning. It is your firm that's on the line on Rule 11. If your client is playing fast and loose, I would hate for there to be a judgment against Blank Rome for attorneys' fees, etc., etc., because you wanted this business and you got in bed with people that are less than 100 percent honest. [Emphasis added.]

(Dkt. No. 15: Transcript from Scheduling Hearing on July 29, 2014, at 24-25.) No facts were before the Court at the time of this conference apart from what the Magistrate Judge may have learned in the NYKCool litigation, to which plaintiff was never a party. In this context, therefore, the above comments were both highly inappropriate and quite revealing about the Magistrate Judge's pre-formed opinions about plaintiff. Indeed, in a similar context, other courts have found that such remarks supported disqualification of the trial judge. *Great Am. Ins. Co. v. 2000 Island Blvd. Condo. Ass'n*, 2014 Fla. App. LEXIS 20418 (Fla. Dist. Ct. App. 3d Dist. Dec. 17, 2014) (disqualifying trial judge on basis of prejudicial remarks made on the record before any summary judgment motion, hearing or even deposition had been taken to develop a record.) The Seventh Circuit has also held that prejudgment based on information obtained outside the courtroom is grounds for disqualification of a judge. *See Pearce v. Sullivan*, 871 F.2d 61, 63 (7th Cir. Ill. 1989) ("Prejudice such as will disqualify a judicial officer (whether judge or hearing examiner) refers to prejudgment based on information obtained outside the courtroom, rather than to rulings, even if hasty or errant, formed on the basis of record evidence and other admissible materials and considerations.")

Our judicial system requires due process rather than decisions based on the "tarnish" of other proceedings. The Magistrate Judge sua sponte pierced the corporate veil when no alter ego allegations were made in the motion and no hearings were held. As noted above, it is well established in this Circuit that "corporate entities are presumed to be distinct." *See*, *e.g.*,

14

*Emeraldian Limited Partnership v. Wellmix Shipping Ltd*, 2009 U.S. Dist. LEXIS 89355, *5 (S.D.N.Y. Sept. 28, 2009).  In *American Renaissance Line, Inc. v. Saxis Steamship Co.*, 502 F.2d 674, 677 (2d Cir. 1974), the Court citing several cases, held: "absent findings of fraud or bad faith, a corporation… is entitled to a presumption of separateness from a sister corporation… even if both are owned and controlled by the same individuals."  Thus, the party seeking to pierce the corporate veil bears a "heavy burden" in proving that an alter ego relationship exists. *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y. 2d 335, 339 (N.Y. 1998); *see also Cargill Investor Services Inc., v. Cooperstein*, 587 F. Supp. 13, 15 (S.D.N.Y. 1984) pierce the corporate veil, a "high level" of domination must be proven).

The Second Circuit has identified a number of specific factors that are relevant in evaluating alter ego claims.[3]  No evidence was submitted by either party on this fact-intensive issue, and the Magistrate Judge never even purported to conduct an analysis of the alter ego "factors" in concluding that plaintiff was one and the same with any of the defendants in the NYKCool litigation.  Consequently, his recommendation to this effect was a clear and highly prejudicial error.  Nor is there any basis for finding any impropriety in the transactions at issue. Plaintiff simply carried bananas for defendant and has not been paid.

### 3. Plaintiff's Complaint Was Filed in Good Faith

There is no evidence to support the Magistrate Judge's recommendation that this Court find that plaintiff or Blank Rome acted in bad faith in filing the complaint.  Rule 11(b) of the Federal Rules of Civil Procedure states that "[b]y presenting to the court a pleading, written

---

[3] These factors include: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of business discretion displayed by allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guaranty of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.  *See MAG Portfolio Consultant, GmbH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991) (applying these factors in the admiralty context); *Emeraldian*, 2009 U.S. Dist. LEXIS 89355 at *7.

motion, or other paper," an attorney certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on belief or a lack of information.

Plaintiff and Blank Rome have fully complied with these requirements. A straightforward complaint was filed, demanding payment of unpaid freight, which even the Magistrate Judge conceded on its face stated a valid cause of action. (Dkt. No. 34: Report at 11.) The factual contentions have evidentiary support including contracts, invoices, email communications and deposition testimony from principals of Redi Fresh. Plaintiff also submitted a declaration from a Director of South Pacific, Jorge Guerrero, and has every intention of calling fact witnesses to testify in this matter. Plaintiff has articulated a clear and specific argument why the consent order does not insulate defendant from liability for the "costs" of shipment, *i.e.*, freight. It is entitled to an assumption of veracity and fair consideration of the merits, after development of a proper record.

The Magistrate Judge has plainly erred in recommending sanctions against plaintiff and Blank Rome. Although the Report relies upon *Catcove Corp. v. Heaney*, 685 F. Supp. 2d 328 (S.D.N.Y. 2010), for instance, it overlooks the key caveat that "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347

16

F.3d 370, 388 (2d Cir. 2003).  And although the law is clear that a court must "resolv[e] all doubts in favor of the part[y] facing sanctions," *Coakley v. Jaffe*, 72 F.Supp. 2d 362, 365 (S.D.N.Y. 1999), it is patently obvious that the Magistrate Judge granted plaintiff and its counsel no such deference here.  The Second Circuit has specifically admonished as follows:

> When reviewing Rule 11 sanctions, however, "we nevertheless need to ensure that any [sanctions] decision is made with restraint." *Schlaifer Nance & Co.*, 194 F.3d at 334; cf. *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998) (noting that one "troublesome aspect of a trial court's power to impose sanctions . . . is that the trial court may act as accuser, fact finder and sentencing judge").

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. N.Y. 2003).  The Magistrate Judge failed to exercise such restraint here.  It is evident that, instead, he indeed has acted as "accuser, fact finder and sentencing judge" based on "evidence" adduced in another lawsuit to which plaintiff was not a party and without a fair hearing of plaintiff's claims.

The Magistrate Judge's suggestion that plaintiff and Blank Rome filed this complaint in "bad faith" with the intent to "harass" is completely misguided and not supported by the facts. Blank Rome would never do this and conducted appropriate due diligence, including reviewing documents provided by its client, conducting legal research, and reviewing deposition transcripts, the NYKCool litigation docket, the necessary pleadings, orders and judgments.  This included a review of the attachment order and the consent order.  Based on its review, Blank Rome concluded that plaintiff has a valid breach of contract claim and a legitimate contention that it is still entitled to payment of freight from defendant, notwithstanding the consent order, for the reasons set forth above.  Plaintiff was not a party to the NYKCool litigation or subject to any judgments or orders issued in that litigation, nor have there been any alter ego hearings or

findings concerning plaintiff. Accordingly, this complaint was filed in good faith, with extensive supporting documentary evidence.

Further, the Magistrate Judge's suggestion that plaintiff engaged in improper forum shopping is erroneous. While represented by prior counsel, plaintiff originally filed a complaint in the Eastern District of New York, but that action was withdrawn. Notably, plaintiff's previous counsel, Hill Rivkins LLP, signed the complaint on the same claim and likewise concluded there would be no Rule 11 violation. Defendant thereafter advised this Court of its intention to file a declaratory judgment action seeking to establish it is not liable for the freight (Dkt. No. 23: Kimball Dec., Ex. 18; Dkt. No. 191: Notice of Joinder of Garnishee), in which plaintiff would have to have filed its claims. Instead, plaintiff decided to initiate suit in New York Supreme Court. It was plaintiff's right to do so as that court had personal jurisdiction over defendant and the breach of contract took place in New York. The venue was also appropriate. That defendant thereafter exercised its right to remove the case renders plaintiff's choice of forum no less valid. Plaintiff did not oppose the removal; however, plaintiff did object to the matter being treated as related to the NYKCool litigation, as plaintiff is not and never has been a party to that litigation and the monies owed to plaintiff are separate and apart from any funds attached pursuant to the attachment order issued in that matter. The Magistrate Judge's conclusion that this matter is factually related to the NYKCool litigation is erroneous. (Dkt. No. 34: Report at 20.) Plaintiff filed this suit in good faith and in the appropriate forum, and the Report should be rejected.

Defendant's assertion that plaintiff warned defendant it would be "playing with fire" if it complied with the Court's attachment order is unsubstantiated and must be disregarded. (Dkt. No. 34: Report at 21.) Plaintiff has challenged defendant's assertion that this suit was filed to "punish" defendant and has also challenged the veracity of Michael Stamatis' declaration, which

18

was submitted without any supporting documentary evidence and without the right of cross-examination. (Dkt. No. 33: Plaintiff's Sur-Reply.) Defendant has provided no substantiation for Stamatis' statement, and there is nothing in the record that supports such a contention. Moreover, the Report cites no evidence suggesting why plaintiff would incur substantial legal fees of its own to harass defendant.

Lastly, in addition to performing the requisite due diligence, Blank Rome was candid with the Court in all respects at the pre-motion conference and in all subsequent communications with the Court. Blank Rome also has fully cooperated with opposing counsel to minimize areas of dispute and narrow the issues before the Court. There has never been any intention to harass anyone and the complaint, motion papers and proceedings indicate no such purpose. The recommendation of sanctions against Blank Rome in this case goes well beyond the far more egregious conduct for which sanctions were deemed appropriate in the many cases cited at page 15 and footnote 7 of the Report.

On the record presently before the Court, there can be no legitimate dispute that plaintiff has set forth a meritorious cause of action and meritorious arguments why it is entitled to recover the unpaid freight from defendant. To the extent defendant may have defenses, they involve disputed issues of material fact, and the Magistrate Judge grossly erred in prejudging those issues against plaintiff without discovery and a fact hearing.

## CONCLUSION

The Report should be rejected because there are numerous genuine issues of fact concerning the merits of plaintiff's claims, and plaintiff and Blank Rome have satisfied the pleading requirements under both Rule 11 and Rule 12. Accordingly, the Court should deny

defendant's motion and set a schedule for completing pre-trial discovery and a trial date. The Court should grant plaintiff such other and further relief as may be appropriate.

     Oral argument is requested.

Dated:     New York, New York
              January 15, 2015

                                        Respectfully submitted,

                                        BLANK ROME LLP

                        By:     s/ John D. Kimball
                                        Attorneys for Plaintiff
                                        John D. Kimball
                                        Thomas H. Belknap, Jr.
                                        Kate B. Belmont
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, New York 10174-0208
                                        Phone:  (212) 885-5000