UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SOUTH PACIFIC SHIPPING COMPANY,
LIMITED,

                Plaintiff/Counterclaim Defendant

v.

REDI-FRESH PRODUCE INC.


Defendant/Counterclaimant

Case No. 14-cv-4157  (LAK)(AJP)

**REDI FRESH'S OPPOSITION TO
SOUTH PACIFIC'S OBJECTIONS TO
MAGISTRATE JUDGE PECK'S
REPORT AND RECOMMENDATION**

Of Counsel:

HOLLAND & KNIGHT LLP
James H. Power, Esq.
Warren E. Gluck, Esq.

# Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................................... 1

FACTS ................................................................................................................................ 3

    A. Redi Fresh and the Truisfruit Agreement ................................................... 3

    B. The NYKCool Litigation, The Attachment Order and The Deposit Order ............. 5

    C. South Pacific's Freight Claim and Blatant Forum Shopping ..................... 8

    D. The Court Conference and Rule 11 Motion ................................................ 9

ARGUMENT .................................................................................................................. 10

POINT I:  SOUTH PACIFIC HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF 11
MAY BE GRANTED 11

    A. Double Liability is Not Permissible Relief ................................................ 11

    B. "Failed to Withhold" and "Paid the Wrong Party" Are the Same Flawed
       Arguments - They Both Lead To Impermissible Double Liability .................... 12

    C. The Attachment and Deposit Order Terms Moot Purported Factual Issues........ 14

    D. South Pacific Has Failed to Set Forth a Plausible Claim ........................ 14

POINT II:  RULE 11 SANCTIONS ARE WARRANTED 16

    A. South Pacific's Claim is Objectively Unreasonable ................................. 16

    B. South Pacific Filed This Action For an Improper Purpose and In Bad Faith.......... 16

    C. South Pacific's Counsel Should Be Sanctioned........................................ 18

POINT III:  MAGISTRATE PECK JUDGED SOUTH PACIFIC FAIRLY ON THE FACTS 18

CONCLUSION 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 11

*Baker v. Ave Advertisers' Service, Inc.,*
    153 F.R.D. 38 (S.D.N.Y. 1992) ............................................................................... 10, 2

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................................... 11

*Diebold Foundation Inc. v. Commissioner of Internal Revenue,*
    736 F.3d 172 (2d Cir. 2013) ......................................................................................... 9

*Embree v. Hanna,*
    5 Johns 101 (1809) ....................................................................................................... 11

*Gal v. Viacom Intern. Inc.,*
    403 F. Supp. 2d 294 (S.D.N.Y. 2005) ....................................................................... 10

*Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.,*
    No. 05-CV-3826, 2009 WL 2957849 (E.D.N.Y. Sept. 10, 2009)............................. 10

*Harris v. Balk,*
    198 U.S. 215 (1905) ...................................................................................................... 11

*JPMorgan Chase Bank, N.A. V. Motorola,*
    47 A.D.3d 293 (1st Dept 2007) .................................................................................. 11

*NYK Cool A.B. v. Pacific International Serv. Inc., et al.,*
    12-cv-5754 (LAK) .................................................................................................... 5, 8

*Oppenheimer v. Dresdner Bank A.G.,*
    50 A.D.2d 434 (2d Dep't 1975) ................................................................................. 11

*Pall Corp. v. Entegris Inc.,*
    249 F.R.D. 48 (E.D.N.Y. 2008) .............................................................................. 10, 2

*Plainville Elec. Prod. Co. Inc. v. Bechtel Bettis Inc.,*
    2009 WL 801639 (D.Conn. 2009) ............................................................................... 5

*Simpson v. Putnam County Nat'l Bank,*
    112 F. Supp. 2d 284 (S.D.N.Y. 2000) ....................................................................... 10

*South Pacific Shipping Company Limited, Inc. v. Redi-Fresh Produce Inc.*,
   14-cv-1725 (E.D.N.Y.) (JBW) ...................................................................... 8, 10

*Western Union Telegraph Co. v. Pennsylvania*,
   368 U.S. 71 (1961) ....................................................................................... 11

*Williamson v. Recovery Ltd. P'ship*,
   542 F.3d 43 (2d. Cir. 2008) ........................................................................... 9

## Other Authorities

CPLR 6201(1) and 6211 ....................................................................................... 5

CPLR 6204 .......................................................................................................... 11

CPLR 6223 ............................................................................................................ 6

Fed. R. Civ. P. R. 11 ................................................................................. *passim*

Federal Rule of Evidence 602 .............................................................................. 5

## PRELIMINARY STATEMENT

Defendant, Redi-Fresh Produce Inc., ("**Redi Fresh**"), by its attorneys, Holland & Knight LLP, submits this opposition to Plaintiff South Pacific Shipping Company Limited's ("**South Pacific**") objection to Magistrate Judge Andrew Peck's Report and Recommendation ("**Recommendation**").

The dismissal of South Pacific's complaint and the imposition Rule 11 sanctions was correct and justified. South Pacific's course of conduct in this litigation unequivocally demonstrates that this patently frivolous action was and is designed to cause Redi Fresh significant financial harm in the form of attorney's fees as punishment for Redi Fresh's refusal to disobey this Court's Attachment Order (defined below) and its deposit of the Bonita Banana proceeds in the Court's registry.[1]

Redi Fresh made an agreement with Truisfruit S.A. ("**Truisfruit**") that it would sell the Bonita Bananas in exchange for a commission, and remit all proceeds to Truisfruit. Redi Fresh never made any agreement with South Pacific concerning freight or otherwise. Truisfruit and the multiple South Pacific/Ecuadorian Line entities are all part of the Noboa organization and controlled by the same people – particularly Diogenis Villacis, director of South Pacific and President of Truisfruit. All Bonita Bananas coming into the port of New York were attached pursuant to this Court's order. It is undisputed that Redi Fresh deposited all proceeds of the Bonita Banana sales in the Court's registry. At best, South Pacific seeks to impose impermissible double liability on Redi Fresh. As Magistrate Judge Peck correctly found, this tactic has no chance of success and is sanction-worthy.

South Pacific's objections to the Recommendation are utterly meritless – just like its positions throughout this litigation. For the better part of its objection, South Pacific attempts to re-hash the same cherry-picked "factual dispute" points that were expressly considered and rejected by. These alleged factual disputes are moot because this Court's Attachment Order (seizing all Bonita Bananas) and Deposit Order (directing all Bonita Banana proceeds be deposited) made the issue of who was owed proceeds from the Bonita Banana sales irrelevant.

---

[1] These Bonita Banana proceeds have all since been turned over, via court order, to judgment creditor NYKCool. The fact that Redi Fresh obeyed court orders requiring attachment and deposit of the Bonita Banana proceeds unleashed the fury of Alvera Noboa and Diogenis Villacis, through their New York counsel Blank Rome LLP, against Redi Fresh.

Next, in a vain and transparent attempt to avoid the consequences of its ludicrous "paid the wrong party" argument, for the first time since the inception of this litigation, South Pacific points to the miscellaneous "costs" provision of the NYKCool Litigation Deposit Order (defined below) and contends that Redi Fresh "should have withheld" freight as a "cost." But "paid the wrong party" and "should have withheld costs" are actually the <u>same</u> sanction-worthy argument. Each argument acknowledges that there was a limited amount of money from which Redi Fresh could make payments (i.e. the Bonita Banana proceeds) and thus, necessarily, the purpose of this action is to impose double liability on Redi Fresh. South Pacific had full knowledge of all court orders and activity in the NYKCool Litigation including the Deposit Order as its director Diogenis Villacis knew been ordered to deposit the Bonita Banana proceeds and did so.

South Pacific also has no meaningful response as to why it did not file a motion to assert its rights to the Bonita Banana proceeds in the NYKCool Litigation, instead of commencing a separate action before two courts with no knowledge of the facts. Nor does it explain how it could ever obtain payment in the face of the NYKCool Litigation's attachment orders, which can still be modified to include South Pacific. Whether South Pacific were to make its motion to recover freight in the NYKCool Litigation or here, the end result would invariably be that NYKCool would name South Pacific as an alter-ego in the NYKCool Litigation and attach any proceeds due.[2]

But of course this action is not about recovering funds for South Pacific. It has nothing to do with money. Rather, this action is a bad faith retaliation for Redi Fresh's refusal to disobey this Court's Attachment Order (defined below) and Redi Fresh's deposit of the funds with the Court. From the very inception of this case South Pacific adopted a course designed to cause as much pain and legal fees to Redi Fresh as possible, and to make good on its threat that Redi Fresh was "playing with fire" if it obeyed the Attachment Order.[3]

---

[2] The evidence in support of an alter ego relationship between the two South Pacific entities, Truisfruit and the other Noboa entities would be overwhelming.

[3] South Pacific's argument that it would not want to spend attorney's fees rings hollow – the Noboa group of entities, to which South Pacific belongs, spends lavishly on lawyers in this district, with little regard to the merits of the case simply to advance its own agenda the those fees are simply the price of the retaliation for its own sake.

Finally, South Pacific argues that Magistrate Judge Peck was prejudiced against South Pacific and rendered an unfair decision as a result. Nothing could be further from the truth. The Recommendation, including the Rule 11 sanctions, is the obvious and clear holding that any judge with knowledge of the underlying facts would have made. Indeed, Magistrate Peck declined to dismiss the case and grant sanctions during the initial conference when it was requested by Redi Fresh's counsel, instead directing the parties to fully brief the issues. All of the facts necessary to decide this case are and were fairly before the Court. More to the point, Magistrate Judge Peck oversaw the NYKCool Litigation. He oversaw all of the sub-litigation in that case concerning Redi Fresh, Truisfruit and South Pacific as to the very agreements at issue in this case.

Magistrate Judge Peck did not unfairly prejudge South Pacific. He appropriately judged South Pacific and its credibility because he had all necessary facts at his disposal – and did so correctly. South Pacific's argument to the contrary is solely based on its fundamental misapprehension of what it means to pierce the corporate veil. Piercing the corporate veil is a finding that one company should be liable for the debts of another. Finding that parties with the same ownership structure, within the same organization and the same United States legal counsel, officers, directors and employees had constructive and actual knowledge of the NYKCool Litigation has nothing to do with liability or piercing the corporate veil.

South Pacific's blatant forum shopping is bad faith. South Pacific's claim mandating double liability is also bad faith. Its submission of the hearsay Guerrero declaration (described below) when its claim arises from an _oral_ contract is bad faith. South Pacific's attempted retaliation for Redi Fresh's obedience of this Court's attachment order is bad faith. Few cases are more appropriate for Rule 11 sanctions. The Recommendation should be upheld in its entirety and South Pacific's objection should be overruled.

## FACTS

### A. _Redi Fresh and the Truisfruit Agreement_

Redi Fresh is a New York Corporation founded in 1998 by Peter Malo and by every measure is a small local business. Over the past fifteen years Redi Fresh has purchased, imported and sold

3

fruit of various types to wholesalers all around the United States. In approximately May and June of 2013, Redi Fresh began negotiations with the Bonita Organization to sell Bonita Bananas. Michael Stamatis ("**Stamatis**") of Redi Fresh negotiated all of the agreements at issue in this case with senior representatives of the Bonita Bananas organization.

The only persons with whom he negotiated and who therefore have personal knowledge of the negotiations and ultimate agreement are: Roberto Ponce, who represented himself as principal of Truisfruit, Diogenis Villacis, who represented himself as negotiating on behalf of the Bonita Bananas organization, and Maddy Gillardo, acts as in-house counsel for all of the Noboa Entities, including South Pacific. Diogenis Villacis was the primary negotiator and at all material times was director and president of South Pacific, while he is also listed on Truisfruit's corporate filings. Mike Stamatis of Redi Fresh travelled to Miami to meet with Diogenis Villacis and Roberto Ponce in their capacities as representatives of the Noboa entities to discuss a potential agreement between Redi Fresh, Truisfruit and South Pacific. It was initially proposed that Redi Fresh buy the Bonita Bananas outright from Truisfruit and that Redi Fresh pay to ship the Bonita Bananas. However, both the price of the bananas and the quoted price of freight by Villacis and Ponce were too high—well above the price offered to other importers in the U.S.—and this proposal was unequivocally rejected by Redi Fresh. *See Stamatis Declaration,* D.E. 26 ¶¶ 1-9.

Instead, solely Redi Fresh via Stamatis and Truisfruit via Villacis and Ponce agreed that Redi Fresh would receive a fixed fee commission of $120,000.00 as consideration for taking title to and selling the Bonita Bananas at prices set by Truisfruit. South Pacific was not involved in this agreement. South Pacific (or an identically named entity also within the Naboa organization) paid the initial portion of that commission on Truisfruit's behalf but stopped paying after this court's attachment order was upheld.[4] *Id.* ¶ 10-12.

Redi Fresh and Truisfruit agreed that Redi Fresh would sell the Bonita Bananas at prices dictated by Truisfruit and remit the proceeds to Truisfruit. The terms were therefore clearly modified

---

[4] *See* Stamatis Declaration Exhibit 1 (wire transfer records evidencing this as well as the initial transfers covering Redi Fresh's attorneys' fees in connection with responding to the garnishment and banana sales).

from a traditional FOB arrangement. Redi Fresh's position concerning the parameters of the deal with Truisfruit, the absence of any deal with South Pacific, and the nature of Redi Fresh's obligation to remit all proceeds to Truisfruit has been consistent since the inception of this litigation.  Moreover, this deal is incompatible with any obligation to pay freight to any party.  Such a deal would be impossible because much like South Pacific's claim in this case, it would result in double liability and a massive loss massive loss to Redi Fresh because Redi Fresh would have to remit all proceeds to Truisfruit (which already included freight) *and* pay freight South Pacific. *See* Id. ¶13.

Redi Fresh never entered any agreement with South Pacific or any other ocean carrier company for the transportation of the Bonita Bananas or any bananas received from Truisfruit. Redi Fresh did not arrange for or otherwise contract South Pacific in regard to the transportation of the bananas.  They simply arrived in New York, shipped at the direction of Truisfruit. Both South Pacific and Truisfruit sent proposed contracts for the outright purchase and ocean transportation of the bananas to Redi Fresh.  The contracts were expressly rejected by Redi Fresh and never signed both because the price of the bananas and freight remained too high and because the NYKCool Litigation made the possibility of a successful, ongoing business transaction unlikely.  *Id.* ¶¶ 14-17

B. *The NYKCool Litigation, The Attachment Order and The Deposit Order*

As set forth in detail in Magistrate Judge Peck's Recommendation, in *NYK Cool A.B. v. Pacific International Serv. Inc., et al.,* 12-cv-5754 (LAK) (**"NYKCOOL Litigation"**) Plaintiff NYKCool confirmed a maritime arbitration award and obtained a judgment in the amount of $8,787,157 against various Noboa/Bonita related entities.[5]  In the face of the "whack-a-mole" style asset transfers and company formations/dissolutions, on or about August 1, 2013, this Court issued an attachment order in the NYKCool Litigation (the **"Attachment Order"**).  The unambiguous terms of the Attachment Order state "IT IS HEREBY ORDERED that, pursuant to CPLR 6201(1) and 6211, all banana cargoes entering the Port of New York under the "Bonita" brand…shall be attached and

---

[5] The Noboa Organization then began transferring assets amongst and between various shell companies, including identically named companies such as the ones at issue here, to avoid the judgment in what Magistrate Peck likened to a "whack-a-mole" game.

5

seized." The Attachment Order was served on Redi Fresh while it was in possession of Bonita Bananas pursuant to the Redi Fresh-Truisfruit agreement.

At the initial hearings concerning the Attachment Order, Redi Fresh explained that Redi Fresh was "receiving the bananas as a consignee" or "broker and that Redi Fresh was not the true beneficial owner of the cargo, rather Redi Fresh was obligated to pay Truisfruit upon the sale of fruit to Redi Fresh's customers." *See* NYKCool Litigation, 12-cv-5754 Conf. Tra. At 13-15; 12-cv-5784 D.E. 102 9/18/13 Conf. Tr. At 12-13, 17, 26, 33.   After motion practice, in which the scope of the Attachment Order's levy (i.e. being "all Bonita Bananas") was specifically litigated and upheld (*see* NYK Cool Litigation D.E.'s 92-102), the Attachment Order was upheld in all respects at a court hearing on September 18, 2013.

Over the next four weeks, voluminous document and deposition discovery took place concerning the nature of the Redi Fresh-Truisfruit agreement, the quantity of bananas actually received and sold, the commissions earned, and the moneys due to Truisfruit. Mike Stamatis testified, in pertinent part, that Redi Fresh expressly rejected the proposed agreement on traditional FOB terms and that Redi Fresh would "begin importing and marketing and distributing the fruit under Redi Fresh for a fixed management fee" of "a hundred and twenty thousand dollars" per year.   All proceeds were to be remitted to Truisfruit minus "expenses relating to the importing and distributing of the product, commissions, cargo brokerage fees, customs fees and all other fees, the net proceeds would be distributed to Truisfruit."[6]   Freight was not included in this arrangement. Moreover, while invoices from South Pacific were sent to Redi Fresh, Mike Stamatis objected to them via telephone.  He was told via telephone by Diogenis Villacis, who acted for both Truisfruit and South Pacific, to ignore the invoices because they were part of a "plan" that did not involve Redi Fresh but instead involved NYKCool. Stamatis Declaration ¶ 30.[7]

Hence, at no time did Redi Fresh enter any agreement with South Pacific. At no time did Redi Fresh owe South Pacific freight.  Redi Fresh does not owe South Pacific freight now.   To the extent

---

[6] *See* Declaration of James H. Power, D.E. 25, Ex. 1, Excerpts from Stamatis Declaration.
[7] See Declaration of James H. Power, D.E. 25 Ex. 2-3 for complete copies of the deposition transcripts of Peter Malo and Michael Stamatis.

freight is owed, it would be owed by Truisfruit. *Id.* ¶ 31-34. This is why it was so egregious for South Pacific to avoid an appearance in the NYKCool Litigation.

At all times, an entity called South Pacific Shipping Co. Ltd. participated in the NYKCool Litigation. Counsel for South Pacific, the same counsel who would later file the first iteration of this action in the Eastern District of New York, was present during the depositions of Redi Fresh's principal, Peter Malo, and Mike Stamatis of Redi Fresh described above.

During the course of the NYKCool Attachment Order litigation, Redi Fresh and the Bonita Organization, specifically Diogenis Villacis, a South Pacific director, and an individual with authority at Truisfruit, engaged in telephone conversations concerning the both litigation and excess Bonita and Rica brand bananas that had been sent by Truisfruit to Redi Fresh but could not be sold. During these conversations, Redi Fresh informed Mr. Vallacis that it would not disobey the attachment order but rather to deposit the Bonita proceeds with the Court. Mr. Villacis stated that Redi Fresh was "playing with fire" if Redi Fresh obeyed the attachment order and deposited the funds. *Id.* ¶40-44[8]. Contrary to South Pacific's contention that this threat cannot be corroborated, there were four other witnesses to the threat who can testify to the same if required.[9]

After the Attachment Order was upheld and the discovery took place, on or about October 28, 2013, this Court issued a Consent Order, publicly filed on ECF (NYKCool Litigation D.E. 126) (the "**Deposit Order**"). The Deposit Order expressly provided that Redi Fresh "is holding funds reflecting the sale proceeds collected from the sale of Bonita brand bananas." Decretal paragraph 1 of the Deposit Order directed Redi Fresh to deposit the attached funds with the Court -- not to "pay" any "party" (or person). Decretal paragraph 5 expressly dealt with how the attached funds could be distributed by the Court (i.e. pursuant to a judgment, stipulation by the NYKCool parties, etc.), but certainly not by Redi Fresh.

---

[8] It should be noted that virtually all the statements in the Stamtis Declaration are also found within the filings in the NYKCool Litigation, Redi Fresh's Letter to all courts and Redi Fresh's answer, D.E. 10.

[9] Tellingly, South Pacific did not submit a sowrn declaration of Diogenis Villacis, despite his being a Director of South Pacific, refuting any of Redi Fresh's allegations.

Decretal paragraph 8 of the Deposit Order provides that "Redi Fresh Produce, Inc. shall have discharged its obligations as garnishee in this action upon receipt of the Attached Funds into the Registry of the Court subject to its obligations as set forth herein regarding 'Future Bonita Funds.'" Decretal paragraph 9 of the Deposit Order provides that "In all other respects, the Attached Funds and any Future Bonita Funds, including all interest earned thereon up to and including the date of withdrawal, shall be held pending further order of this Court."

There is no dispute in this case that Redi Fresh deposited the Attached Funds with the Court and further complied with its obligations concerning the Future Bonita Funds. There is also no dispute that Redi Fresh fully complied with the Deposit Order and all Bonita proceeds were deposited in this Court's registry. There is no dispute that Redi Fresh had no further involvement in the NYKCool Litigation and had no involvement in any release of the deposited funds pursuant to decretal paragraphs 5 and 9 of the Deposit Order (or otherwise).

C. *South Pacific's Freight Claim and Blatant Forum Shopping*

Nearly six months later, on March 17, 2014, one day after judgment was entered against Truisfruit in the NYKCool litigation, South Pacific commenced an action styled *South Pacific Shipping Company Limited, Inc. v. Redi-Fresh Produce Inc.*, 14-cv-1725 (E.D.N.Y.) (JBW) ("**EDNY Complaint**"). The EDNY Complaint was filed by South Pacific's counsel in the NYKCOOL Litigation, Michael Wilson Esq. of Hill Rivkins LLP ("**Wilson**").

In the EDNY Complaint, South Pacific alleged that "South Pacific Shipping, is a foreign corporation with an agent, Ecuadorian Line Inc., with an office and place of business at 60 Park Place. Newark, NJ, and is the owner and/or operation [sic] of ocean vessels." Ecuadorian Line Inc. is a judgment debtor in the NYKCool Litigation. South Pacific's initial filing in this case stands in stark contrast to South Pacific's current, specious contention that South Pacific is doing business as "Ecuadorian Line" [without the "Inc."] and <u>not</u> Ecuadorian Line Inc.[10]

---

[10] It is undisputed that South Pacific is a member of the Noboa organization, which includes another identically named South Pacific entity, named in the NYKCool Litigation, Truisfruit and Ecuadorian Line Inc. ("**Ecuadorian Line**"). Confusingly, South Pacific claims it does "business" as Ecuadorian Line but that this is distinct from Ecquadorian Line

On April 8, 2014, Redi Fresh sent a letter to the EDNY Court and this Court objecting to South Pacific's forum shopping tactics and the claim itself ("**Letter**"). The EDNY Complaint was withdrawn by South Pacific the next day. Over the course of the next weeks, Redi Fresh requested a formal release from South Pacific. When this was not forthcoming, Redi Fresh notified this Court in a filing in the NYKCool Litigation that Redi Fresh would be seeking a declaratory judgment from this Court that it had no further liability. The next day, on May 30, 2014, South Pacific's current counsel filed its Complaint in New York state court despite its obvious relation to this case. Redi Fresh removed the action to this Court and this Court granted Redi Fresh's request to mark the case as related to the NYKCool Litigation. Redi Fresh further filed an answer to South Pacific's complaint that detailed the frivolous nature of this action. D.E. 10. South Pacific asserted its claim was not sufficiently related as to be marked related to the NYKCool Litigation.

### D. *The Court Conference and Rule 11 Motion*

On July 29, 2014, a conference was held before Magistrate Judge Peck. At that conference Redi Fresh requested that South Pacific's complaint be dismissed as frivolous immediately. Contrary to South Pacific's current assertions, Magistrate Peck expressly declined to "prejudge" the issue and set a full briefing schedule with respect to the instant motion. He further expressly warned Blank Rome, new counsel for South Pacific, that if he found that its client was playing fast and loose with the Court, that Blank Rome would be sanctioned as well. A complete copy of the Transcript can be found on PACER D.E. 15.

In its opposition to Redi Fresh's Rule 11 motion to dismiss, Blank Rome raised the same purported factual issues that it now raises in its objection. In reply, Redi Fresh responded to these by explaining that purported factual issues were irrelevant in light of the broad scope and express terms of the Attachment Order and the Deposit Order, but nevertheless clarified South Pacific's baseless contentions, supported not by South Pacific Director Diogenis Vallicis, but an individual with no knowledge of the negotiations and agreement between Truisfruit and Redi Fresh.

---

and has not offered proof of any other corporate registration. Redi Fresh has conducted a search for another Ecuadorian Line entity, particularly in Panama's open corporate registry and has found no such alleged entity.

Blank Rome further made a frivolous and fundamentally incompatible argument that Redi Fresh could be held liable to South Pacific because it "paid the wrong party." Redi Fresh argued in reply that it did not "pay" anyone but rather "deposited" funds with the Court. Redi Fresh also pointed out that the "paid the wrong party" argument admits there was a limited amount of funds from which South Pacific, even on the dubious assumption it was owed anything, could be paid. As such, South Pacific was necessarily seeking double liability. South Pacific knew then and it knows now that the funds the claim they are entitled to were deposited in the Court's registry.

Redi Fresh further argued that the clear and sole non-sanction-worthy remedy for South Pacific would have been to file a motion in the NYKCool Litigation to assert its rights. As the precise nature of Redi Fresh's obtainment of Bonita Bananas had already been litigated and extensive discovery (including deposition testimony) made, South Pacific would merely have had to present its arguments and any additional facts it deemed necessary in the NYKCool Litigation. As mere garnishee, would not have had substantial, if any, involvement. South Pacific declined address why it did not take this obvious course during the Rule 11 briefing or its objection to the Recommendation. It has also provided no justification for its forum shopping tactics. Lastly, South Pacific could not expect to ever receive any proceeds in view of the NYKCool Litigation and an attachment order that would certainly be amended to include South Pacific.

## ARGUMENT

Rule 11 of the Federal Rules of Civil Procedure provides that sanctions may be imposed when pleadings, papers or other written motions are presented to the Court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation... [or] the claims defenses and other legal contentions are [not] warranted by existing law" Fed. R. Civ. P. R. 11.[11]

The standard for Rule 11 sanctions is simple and clear: sanctions are warranted (i) when litigation is brought for an improper or malicious purpose, such as to harass or to increase needlessly

---

[11] "The central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." *See Gal v. Viacom Intern. Inc.,* 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) *(citing Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990); *see also Gelfman Int'l Enterprises v. Miami Sun Int'l Corp.,* No. 05-CV-3826, 2009 WL 2957849, at *4 (E.D.N.Y. Sept. 10, 2009) (objective standard of reasonableness employed and sanctions are appropriate where a paper is presented for an improper purpose or is not well grounded in fact).

the cost of litigation, _or_ (ii) when the claims are frivolous.   While satisfaction of either prong warrants the imposition of sanctions, as Magistrate Judge Peck correctly found, South Pacific's bad faith, retaliatory litigation conduct and patently frivolous claim implicate both prongs of the Rule 11 test.

This Court's review of the Recommendation will generally be _de novo_.  When a party makes only conclusory or general objections, or _simply reiterates his original arguments_, the court reviews the report and recommendation only for clear error.  _Pall Corp. v. Entegris Inc.,_ 249 F.R.D. 48 (E.D.N.Y. 2008) (emphasis supplied) (citing _Pizarro v. Bartlett,_ 776 F.Supp. 815, 817 (S.D.N.Y. 1991).   Additionally, a party is not entitled to _de novo_ review of an argument not raised in a seasonable manner before the magistrate judge. _Baker v. Ave Advertisers' Service, Inc.,_ 153 F.R.D. 38 (S.D.N.Y. 1992) (citing _Paterson-Leitsch Co. v. Mass. Mun. Wholesale Elec. Co.,_ 840 F.2d 985, 990-91 (1st Cir. 1988)).

## POINT I:  SOUTH PACIFIC HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As set forth by the Supreme Court in the _Iqbal_ and _Twombly_ decisions, to avoid dismissal, South Pacific must not merely present a claim upon which the relief requested may be granted, but the complaint and the allegations contained therein must be plausible. _See Ashcroft v. Iqbal,_ 556 U.S. 662, 677-79 (2009) (quoting _Bell Atlantic Corp. v. Twombly,_ 550 U.S. 544, 556-57 (2007)).   South Pacific's claim fails on both counts.  First the relief requested by South Pacific is to hold Redi Fresh doubly liable in respect of the same funds already paid to this Court.  Second, South Pacific's claim for breach of an alleged oral freight contract is not plausible given the context of this dispute.

### A. _Double Liability is Not Permissible Relief_

For centuries the U.S. Supreme Court has recognized that double liability raises concerns of a constitutional nature. As Justice Kent wrote, "[n]othing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again." _Embree v. Hanna,_ 5 Johns 101, 102 (1809); see also _Harris v. Balk_, 198 U.S. 215, 226 (1905) ("It ought to be and it is the object of courts to prevent the payment of any debt twice

11

over."). Applying this principle, the Supreme Court warned that even where the court has *in rem* jurisdiction, "the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment." *Western Union Telegraph Co. v. Pennsylvania,* 368 U.S. 71, 75 (1961).

New York's courts also recognize the prohibition on double liability and have held that this prohibition is "reflected" in the CPLR's discharge provisions. *See Oppenheimer v. Dresdner Bank A.G.,* 50 A.D.2d 434, 441 (2d Dep't 1975); *see also* CPLR 6204 (providing that upon payment of the money or personal property by the garnishee, the garnishee is discharged from his obligations to the extent of the obligation of payment); *JPMorgan Chase Bank, N.A. V. Motorola,* 47 A.D.3d 293, 306-07 (1st Dept 2007) (requiring a bank to pay a debt twice over "would be 'an unconscionable result'"). Meanwhile, this Court's own Deposit Order expressly provided that Redi Fresh was "discharged from its obligations as garnishee." This of course includes paying South pacific moneys which South Pacific has already admitted were "incorrectly" "paid" by Redi Fresh to the Court.

   B. *"Failed to Withhold" and "Paid the Wrong Party" Are the Same Flawed Arguments - <u>They Both Lead To Impermissible Double Liability</u>*

The undeniable fact is that Redi Fresh <u>deposited</u> all Bonita Banana proceeds with this Court in good faith, pursuant to a Court order based upon an explicit understanding of debts due, which understanding was stated repeatedly under oath in multiple depositions, and which position South Pacific had undeniable actual constructive knowledge.

In its opposition to Redi Fresh's Rule 11 motion, South Pacific made the ludicrous argument that double liability was appropriate in this case because Redi Fresh "paid the wrong party." Of course, Redi Fresh clearly "deposited" the money with the "Court," and had no influence on the funds' distribution, and did not "pay" anyone. However, the most important part of South Pacific's apparently-abandoned "paid the wrong party" theory was that by making this argument, South Pacific inescapably acknowledged that <u>particular</u> funds are at issue in this case. If Redi Fresh paid the "wrong" party that means that the "wrong" party is holding <u>the</u> funds. The fact that particular funds

12

is at issue goes to the very heart of double liability.  As Magistrate Judge Peck noted, "South Pacific's argument admits of the fact that Redi Fresh had limited funds with which to meet obligations arising from Bonita banana sales." Recommendation at 12.

Now, South Pacific points to the miscellaneous "costs" provision of the Deposit Order, and contends that the nearly one million dollars in alleged freight that Redi Fresh testified under oath redi Fresh did not believe was owed by Redi Fresh to South Pacific, undeniably constituted the attached proceeds of the Bonita Bananas sales, and the majority of the total funds deposited,  should have been "withheld" as a miscellaneous "cost" under the Deposit Order.[12]

Like its "paid the wrong party" theory, South Pacific's "cost" argument is absurd on its face. The notion that in a particularized and carefully negotiated order like the agreed Deposit Order, any party or the Court would have intended more than half of the total banana proceeds could be "withheld" as an inexplicit or miscellaneous "cost" is ridiculous.[13]

Moreover, Redi Fresh obviously did not withhold any freight costs.  So just as with the "paid the wrong party" argument, when South Pacific says Redi Fresh should have withheld the money, it is necessarily admitting that Redi Fresh had limited funds to meet obligations arising out of the Bonita Banana sales, and that these funds were deposited with the Court.  The inescapable result is double liability. Once Redi Fresh deposited the funds representing the Bonita Banana proceeds with the Court and thereafter had no role or influence in the funds' distribution,  Redi Fresh was relieved of its obligations as garnishee by the terms of the both the Deposit Order and statute.  As such, whether the argument is termed "paid the wrong party" or "should have withheld costs," the distinction is without a difference. All roads lead to the impermissible outcome of double liability for Redi Fresh.  Accordingly, South Pacific necessarily fails to state a claim upon which relief may be granted.

---

[12] South Pacific's latest absurd argument, in a long line of absurd arguments, is actually somewhat unique in that it implicates *both* the "failure to raise" *and* the "mere repetition" exceptions to this Court's *de novo* review obligation.  As noted above this is the first time that South Pacific pointed to the Deposit Order's miscellaneous "costs" provision, but the argument is simply the "paid the wrong party" theory in a less clumsily worded format.

[13] It is equally ridiculous to suggest Redi Fresh could ever receive an exception from the Court's order directing it to deposit all Bonita Banana proceeds for "freight" owed to either a named defendant or at least an identically named affiliate in the NYKCool Litigation.

13

C.  *The Attachment and Deposit Order Terms Moot Purported Factual Issues*

South Pacific claims that "factual issues" should prevent the dismissal of this action.  Quite to the contrary, South Pacific's claim falls woefully short of stating a plausible claim.  But the purported factual issues are a red herring in any event. By directing that "all Bonita Banana Cargoes" entering New York be seized, this Court issued an unusually broad attachment order in direct response to the Noboa Group's judgment evasion tactics.  Indeed, the validity of the unusually broad scope of the Attachment Order was litigated.  After the provision was upheld, Redi Fresh liquidated and sold the Bonita Banana cargoes and dutifully deposited all such proceeds with the Court.  Under the circumstances, the question of whether freight was owed was irrelevant.  The value of the Bonita Bananas themselves was seized, not a particular debt to any entity or person, whether Truisfruit or South Pacific or anyone else.  Accordingly, the unusually broad scope of the Attachment Order moots the issue of to whom Redi Fresh owed money when the funds were deposited.  Any party that believed it was entitled to payment with knowledge of the NYKCool Litigation and deposit should have appeared and stated its claim to the Court.  South Pacific intentionally declined to do so.

Turning to the substance of South Pacific's "factual dispute" contentions, which Magistrate Judge Peck rejected, the following things are clear:  First, the term FOB was a misnomer and did not reflect the parties' actual agreement and South Pacific has certainly not pointed to any standard FOB provision that includes a sales commission. Second, the fact that the Redi Fresh refused to sign all proposed written Truisfruit and South Pacific contracts weighs  entirely in Redi Fresh's favor, not South Pacific's.  Meanwhile, as Redi Fresh has stated under oath, no agreement was ever made with South Pacific and Redi Fresh never requested South Pacific to transport the bananas - they simply arrived in New York, clearly and undeniably at Truisfruit's instruction.[14]

D.  *South Pacific Has Failed to Set Forth a Plausible Claim*

By way of summary, in this case South Pacific has brought a nearly one-million-dollar lawsuit seeking double liability against Redi Fresh based upon an alleged <u>oral</u> freight agreement between

---

[14] It is again worth noting that Diogenes Villacis, the very individual with whom Mr. Stamatis negotiated serves as director and president of South Pacific and controls Truisfruit.

Redi Fresh and South Pacific, and runs to the contrary to the sworn testimony of Redi Fresh. Moreover, South Pacific does not make this claim in a vaccum, but rather in the context of the NYKCool Litigation, where the precise parameters of the Redi Fresh agreement with Truisfruit was fully litigated.  South Pacific, separate entity or not, and party or not, was on constructive and actual notice of the NYKCool Litigation, particularly as it concerned Redi Fresh.

It is therefore shocking that South Pacific <u>chose</u> to support its claim that Redi Fresh and South Pacific made an oral agreement by presenting the <u>hearsay</u> declaration of Jorge Guerrero, who had absolutely no role in the alleged negotiations and was not a director at the time of the negotiations.[15] It is even more shocking that South Pacific did this in the context of:

(i) all of the discovery, hearings, and deposition testimony and orders in the NYKCool Litigation, including Redi Fresh's clear and consistent testimony that all Bonita proceeds were due to Truisfruit and that no freight was owed to South Pacific;

(ii) Redi Fresh's proof that South Pacific (or at the very least an entity called South Pacific Shipping Co. Ltd. utilizing the same employees and emails to conduct South Pacific business) *paid* the very commission payments (owed by Truisfruit) that wholly undermine South Pacific's claim; and

(iii) Redi Fresh's motion for sanctions on the ground that this claim is frivolous and in bad faith.

At the same time, South Pacific consciously chose <u>not</u> to submit a declaration of Diogenes Villacis, who is within South Pacific's control as he is also a director of South Pacific and who <u>actually</u> conducted the negotiations upon which South Pacific's breach of oral agreement claim is based.[16]   As such, his contention that "In mid-July 2013, South Pacific made an agreement with [Redi Fresh], by which we would transport shipments of bananas Redi Fresh was buying from Truisfruit S.A..." is inadmissible and should be disregarded.[17]

---

[15] *See* Federal Rule of Evidence 602 (requiring a witness to have personal knowledge); *Plainville Elec. Prod. Co. Inc. v. Bechtel Bettis Inc.,* 2009 WL 801639 *14 (D.Conn. 2009) (striking employee's interrogatory answers in connection with internal discussions concerning bid negotiations employee was not part of those discussions).

[16] The undersigned counsel granted South Pacific an extension to submit their opposition to Redi Fresh's Rule 11 motion on what the undersigned believed was a representation that South Pacific required time to obtain the witness statement from Diogenis Villacis, not a hearsay declaration from a formerly low-level employee of the Naboa Organization who had no role in the negotiations and who was conveniently named director of South Pacific after this dispute arose as a thinly disguised attempt to shield Mr. Villacis, the link between all the Noboa entities from having to appear and commit perjury.

Moreover, South Pacific still has no meaningful explanation for the commission payment that South Pacific Shipping Co. Ltd. made to Redi Fresh. This commission payment is fundamentally incompatible with any freight contract or payment obligation by Redi Fresh. Their sole response is that the commission payment was made by "another" South Pacific. That does not make the payment any less undermining or alleviate South Pacific from the constructive and actual knowledge that it was made.

South Pacific's unsupported allegation of an "oral contract" for freight payment in the face of overwhelming evidence to the contrary adduced in related litigation in conjunction with its failure to submit sworn testimony by a person that actually participated in the alleged oral negotiations falls well short of the plausibility requirement.

## POINT II:  RULE 11 SANCTIONS ARE WARRANTED

### A.  *South Pacific's Claim is Objectively Unreasonable*

South Pacific filed this action with the admitted and express intent to impose double liability on Redi Fresh. This is obviously impermissible. However, what makes this action both objectively unreasonable and sanction-worthy is that the obvious route available to South Pacific (if it really believed that it was owed freight) would have been to intervene in the NYKCool Litigation and assert its rights. CPLR 6223 expressly affords South Pacific this right as it allows any "interested person" to make such a motion. As Magistrate Peck correctly found, "[a]ny objectively reasonable inquiry into the law, even a simple Google search of the parties' names, would have led to the conclusion that the appropriate mechanism for recovering funds was a motion in the NYKCool Litigation." However, a motion within the NYKCool Litigation, where the Court had substantial knowledge of the facts and minimal, if any, attorney's fees and cost would inure to Redi Fresh, was incompatible with South Pacific's bad-faith goal of retaliation.

### B.  *South Pacific Filed This Action For an Improper Purpose and In Bad Faith*

---

[17] South Pacific's odd choice of witness is explainable. Redi Fresh believes that if any actual participant to the negotiations submitted a statement under oath in support of South Pacific's position that a freight agreement was reached in July 2013 or at any time they would be committing perjury. *See* Stamatis Declaration ¶¶ 17-29.

16

The Noboa organization, and particularly South Pacific director Diogenis Villacis threatened Redi Fresh that it was "playing with fire" if it obeyed this Court's attachment order.  This action is the retaliation that South Pacific promised.

Here, in addition to the clear threat made by Diogenis Villacis to Redi Fresh, there is considerable objective evidence that the purpose of this action is to cause Redi Fresh harm in the form of attorneys' fees.  This evidence includes South Pacific's decision not to file a motion to recover the funds in the NYKCool Litigation, but also its tactic of initially filing this action before courts unfamiliar with the facts. With regard to South Pacific's forum shopping tactics, the following facts are informative:

(i) at a time when no one had voiced the alleged distinction between the various South Pacific and Ecuadorian Line entities,

(ii) using Wilson, the same counsel that represented all of the Noboa/Bonita entities in the NYKCool Litigation, and

(iii) which same counsel, Wilson, attended the depositions of Redi Fresh principals Peter Malo and Mike Stamatis (who stated under oath the no freight was owed) on behalf of the "other," South Pacific,

South Pacific initiated its retaliation against Redi Fresh by filing an obviously related breach of oral contract claim arising from a claim in the Eastern District of New York.  South Pacific did this for the sole purpose of forcing Redi Fresh to expend legal fees educating a Court that was unfamiliar with the voluminous and complicated facts of this case in respect of a claim that no lawyer could have brought in good faith in the first place. When Redi Fresh confronted South Pacific with this obvious bad faith strategy, including the impermissible goal of double liability via its Letter, South Pacific's then-counsel thought better of the bad faith strategy and withdrew the claim in less than 24 hours. Blank Rome, South Pacific's new counsel, then chose to file another version of the claim in state court (instead of this Court) for the same wrongful purpose.

South Pacific's claim is also bad-faith at the factual level.  It brought this claim when it knows that its sister company, also called South Pacific, made Redi Fresh's commission payment which is

17

incompatible with the freight claim, and has refused to submit any sworn statement that there was an oral agreement by a person that participated in the alleged oral negotiations.

C. *South Pacific's Counsel Should Be Sanctioned*

South Pacific's counsel knowingly assisted in all of this. In his Recommendation, Magistrate Peck kindly found that Blank Rome must have failed to perform due diligence, because any lawyer with basic knowledge of the facts would not have brought this action, and would have known that this action was inextricably related to the NYKCool Litigation. However, in its objection to the Recommendation, Blank Rome rejects Magistrate Peck's sympathetic and favorable assumption that Blank Rome simply didn't engage in enough due diligence and instead "doubles down" on its position. Blank Rome's position is that it performed full due diligence and would engage in the same conduct again. If that is true, then the sanctions granted ought to be increased to deter future similar conduct. Concerning the Guerrero Declaration, Blank Rome either knowingly submitted the statement of a declarant who was not present for the negotiations in an alleged breach of oral agreement case or failed to perform due diligence on this point which would have revealed the Diogenis Villacis was the director of South Pacific that conducted the negotiations with Redi Fresh, not Mr. Guerrero. Moreover, any sanctions award that does not include South Pacific's counsel will be hollow. South Pacific is a Panamanian company with no known assets in the United States, affiliated with willful judgment evaders, and the enforcement cost would likely exceed any recovery.

**POINT III:  MAGISTRATE PECK JUDGED SOUTH PACIFIC FAIRLY ON THE FACTS**

The Recommendation correctly found that South Pacific had actual or constructive knowledge of the NYKCool Litigation. Magistrate Peck correctly and justifiably found that South Pacific, regardless of whether it was a party to the NYKCool Litigation, had actual and/or constructive knowledge of that proceeding and in particular, the substantial litigation concerning Redi Fresh.

In its objection South Pacific claims that Magistrate Judge Peck improperly "pierced the corporate veil" as between South Pacific and its identically named sister company, South Pacific Shipping Company Limited (an undisputed defendant in the NYKCool Litigation). South Pacific's counsel has either intentionally or unintentionally conflated the fundamental concepts of notice and

18

piercing the corporate veil.  Piercing the corporate veil refers to the legal act of holding a particular entity or person liable for the debts of another, notwithstanding purported corporate separateness. *See, e.g., Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d. Cir. 2008).

Magistrate Peck's holding has nothing to do with piercing the corporate veil.  The corporate veil shields separate entities from joint liability, not joint knowledge.  The test for piercing the corporate veil is strict and requires a showing of asset commingling and use of the corporate form to perpetrate a wrong. *Id.*[18] The liberal test for constructive knowledge is clearly and unequivocally met here.  *See Diebold Foundation Inc. v. Commissioner of Internal Revenue,* 736 F.3d 172, 186-188 (2d Cir. 2013) (holding that constructive knowledge merely requires "being aware of circumstances that should have led them to further inquiry…" and "the knowledge that ordinary diligence would have elicited").

In this case, Magistrate Peck merely found that South Pacific was "on notice" of the NYKCool Litigation, which incidentally seems undisputed by South Pacific.  The two Noboa controlled South Pacific entities are managed and operated by the same persons using the same email addresses.  Emails concerning the commission payments made by the alleged "other" South Pacific entity came from the same persons and email stems as emails concerning the cargo itself, including the freight payments.  Both South Pacific entities used the same counsel. Wilson represented South Pacific Shipping Co. Ltd. in the NYKCool Litigation throughout the relevant time period and was present in the Redi Fresh depositions within that litigation.  He was afforded the opportunity to but did ask questions of Redi Fresh's principals concerning the precise subject matter of this action within those depositions.  Wilson also filed South Pacific's initial complaint in this action in the Eastern District of New York.

Moreover, this court should disregard South Pacific's wholly unsupported and contradictory protests that it is doing business as an "Ecuadorian Line" that is distinct from the Ecuadorian Line Inc. that is a party and judgment debtor in the NYKCool Litigation.  South Pacific has provided no

---

[18] While the corporate veil of the Noboa entities should be pierced based upon facts not at issue in this motion, the important point is that Magistrate Peck did not pierce the corporate veil by virtue of the Recommendation.

19

evidence or support that a "Panamanian" Ecuadorian Line exists and a search of the Panamanian Registry yields no such entity.  In addition to being indisputably part of the Noboa organization, South Pacific itself stated in the EDNY Complaint  that it was doing business as "Ecuadorian Line Inc." (not merely "Ecuadorian Line") with the same address as the Ecuadorian Line Inc. judgment debtor in the NYKCool Litigation.

Finally, it is obvious that Magistrate Judge Peck did not "prejudge" this matter as South Pacific contends.  All of the facts necessary for this Court to arrive at the conclusions set forth in the Recommendation were before the Court.  The fact that much of the information and testimony relevant to this case took place in the NYKCool Litigation, which has been deemed related to this case, goes directly to the attempted forum shopping by South Pacific.  Moreover, despite repeated requests, Magistrate Peck declined to dismiss the case or issue Rule 11 sanctions until this matter was fully briefed.

## CONCLUSION

No party would ever admit that their litigation strategy is malicious or frivolous.  Courts must therefore employ an objective standard of reasonableness to determine whether Rule 11 has been violated.  This is not a leverage game between a multi-national shipping company and an Ecuadorian Banana empire like the NYKCool Litigation where scorched earth tactics might be expected.  This is an uninsured lawsuit against a small fruit importer with the purpose of punishing a local business for not bending to the will of Mr. Noboa by disobeying a Court order, which ultimately resulted in funds being disbursed to NYKCool, something that Noboa has gone to extraordinary lengths to prevent.

Every component of South Pacific's claim and tactics reek of bad faith and wrongful purpose. These are not the wrongs of affiliated companies avoiding a debt in the NYKCool Litigation, these are South Pacific's wrongs in this case.  South Pacific's oral breach of contract claim is frivolous and it does not state a claim upon which relief may be granted.  It was brought in a manner designed and intended to cause Redi Fresh maximum harm while serving no goal of South Pacific.  For the foregoing reasons the Recommendation should be upheld and South Pacific's objections should be overruled.

20

Dated:  January 30, 2015

           HOLLAND & KNIGHT LLP

           By:      **/S JAMES H. POWER**

                  James H. Power, Esq.
                  Warren E. Gluck, Esq.
                  HOLLAND & KNIGHT LLP
                  31 West 52nd Street
                  New York, New York 10019
                  Telephone:  212-513-3200
                  Telefax: 212-385-9010
                  Email:  james.power@hklaw.com
                            warren.gluck@hklaw.com

                  *Counsel for Redi-Fresh Produce, Inc.*